Plaintiff, widow of Thomas W. Hemphill, seeks to recover compensation for herself and a minor son for the death of her said husband, allegedly resulting from an injury received while in the course of his employment by defendant.
The facts show that decedent was a carpenter in the employ of the defendant, Tremont Lumber Company. On April 27, 1943, Hemphill, with another carpenter by the name of Lasyone, and a foreman, Warren, were engaged in repairing a house belonging to the Tremont Lumber Company. The repairs included re-roofing, which required the application of about 8 rolls of roofing material. Each of these rolls weighed approximately 95 pounds, and the testimony shows that each carpenter carried four of the rolls up a ladder to the roof, which was about 12 or 13 feet above the ground. Hemphill and Lasyone each carried two rolls to the roof during the forenoon and made application by fastening the roofing material with nails and treating it with hot tar.
Work ceased at noon for lunch, and it appears that Hemphill ate a substantial lunch, which had been prepared by his wife, resuming work about one o'clock in the afternoon. It is established that during the afternoon Hemphill carried two rolls of roofing up to the roof, but no definite time as to this activity on the part of Hemphill was fixed by the witnesses. *Page 636 
At or about the time the roofing operation was completed, between 3:30 and 4 in the afternoon, Hemphill descended the ladder from the roof, walked a little distance from the house, sat down and complained of a pain in his chest. There is some testimony that he took a drink of ice water after descending the ladder, but this is not definitely established. After resting for a brief period, he did go to the keg of water to get another drink, and continued to complain of pain. Both Lasyone and Warren suggested that he see the doctor, and Warren offered to take Hemphill in his car. This offer was refused and Hemphill walked to the office of Dr. Scott, the physician in the employ of the defendant company, some half mile distant.
Upon arrival at the office of the doctor, Hemphill complained of a terrible pain in his chest. Dr. Scott administered a hypodermic, intended to relieve the pain, and, acceding to the repeated request of the patient for some medicine which would cause him to belch, and so, as he believed, relieve the pressure which was causing the violent pain, also administered a dose of diluted hydrochloric acid and pepsin in water. Dr. Scott diagnosed the case at the time as acute indigestion, and, after the treatment prescribed, permitted Hemphill to leave his office for the purpose of returning to his home in a car belonging to his brother-in-law, one Ed Guin. Hemphill was placed on the back seat of the car and Guin and his wife occupied the front seat. Hemphill died on the journey. Death, preceded by a few gasping and labored breaths, came when the party had proceeded only some four or five miles from the doctor's office. An inquest was held later in the evening, and a verdict of death resulting from heart trouble was returned.
There is no evidence that the decedent had ever suffered from any type of heart disease prior to the fatal attack. He was a man 49 years of age, short in stature, weighing about 150 pounds, and, apparently, in good health up to the very moment of the attack.
As the basis for recovery plaintiff claims that over-exertion in unusual heat in the course of his employment caused or contributed to the death of decedent.
On the point of exertion, the only evidence in the record of any unusual exertion on the part of decedent consists of the establishment of the fact that on two occasions after resuming work at 1 o'clock and before the attack suffered by decedent at approximately 3:30, he had carried two 95-pound rolls of roofing up the ladder to the roof of the house upon which he was engaged in working. As to the claim of decedent's overheated condition, it is shown that the late April day was perhaps somewhat warmer than average, and that plaintiff's clothing was observed to be wet with perspiration. Warren, the foreman, testified that after Hemphill descended the ladder and complained of pain he advised him to sit down in the shade and cool off, apparently because, in Warren's words, "he was pretty warm", although "not hot enough to look out for anything of that kind, but he was pretty warm".
The record includes the testimony of five doctors, three of whom appear as witnesses for plaintiff, and two on behalf of defendant. Of these witnesses only one, Dr. Scott, had the opportunity of seeing the deceased before death. Only one other, Dr. Donaldson, the coroner, had the opportunity to examine the deceased after death. The testimony of the remaining medical experts is, therefore, necessarily confined to expression of opinions based upon the history as given to them by other parties.
There is little testimony on the part of the lay witnesses in this case which is of material assistance to the court in deciding the issues involved. We think the testimony of these witnesses has definitely established the fact that the deceased began to suffer suddenly from a severe and agonizing pain in the chest, but careful and repeated examination of the record discloses nothing within the knowledge of these witnesses which would tend to establish any cause for decedent's suffering. Apparently, Hemphill's labors were not unusual and were of the same type and character which he had been accustomed to perform for many years while in the service of defendant company as a carpenter. Indeed, the work which he performed on the day in question was not as strenuous as might have been ordinarily expected with the single exception of the established fact that he did carry several heavy rolls of roofing material up the ladder to the roof of the house which he was engaged in repairing. His fellow-workers observed no sign of any indisposition or illness on his part, and, on the contrary, testified that he appeared to be in the best of health and spirits up to the time he ceased work and began to complain of severe pain. Since, therefore, *Page 637 
there is nothing determinative in the testimony of the lay witnesses, we must attempt to find the solution of this matter in the medical evidence.
[1] While this case does not involve any accident causing external injuries or producing objective symptoms thereof, nevertheless, consideration must be given to the possibility of some injury to the physical structure of the body resulting in the breaking down of the body structure or in the acceleration or aggravation of a pre-existing disease. Under the established jurisprudence of our State such effects, although they do not follow the occurrence of an "accident" according to the strict definition of the term, are, nonetheless, classified as accidents within the meaning and intent of our compensation statute.
In beginning this discussion, we are convinced that there are two points which may be eliminated from consideration. First, the contention on behalf of plaintiff that under the circumstances drinking of ice water by the deceased might have caused or contributed to his death, and, second, the claim made by the defendant that death resulted from acute indigestion. Neither of these contentions is substantiated by the record, and, for this reason, we definitely eliminate them from consideration.
For the plaintiff, Dr. Donaldson, coroner of Grant Parish, testified that he held an inquest over the body of Tom Hemphill, took the testimony of witnesses, and concluded the cause of death to have been "heart trouble", which was the verdict returned by the jury.
The doctor testified further that the kind of work in which the decedent was engaged would have contributed to his death. However, the witness could not definitely assign any specific type of heart trouble as the cause of death, and his conclusion, in fact, must be held to have been reached on the basis of speculation as to what might or what could have happened.
Dr. Charles H. Mosley, a witness for defendant who had neither seen decedent before death nor viewed the body after death, testified in answer to a hypothetical question, propounded by plaintiff's counsel, that, in his opinion, deceased died of angina pectoris. In answer to the question "That is a trouble with the heart?" the doctor answered "We don't know what it is." The witness was of the opinion that decedent's heart was not able to do the work required of it, and that the failure of the heart was evidently caused from heavy work. Dr. Mosley also testified that he positively predicated his opinion upon a history of the case which had been furnished him to the effect "that the man climbed a ladder in hot weather and came down and took a pain in his chest and died".
An opinion predicated upon facts not established should not be regarded as being entitled to great weight. In the instant case, the facts quoted above, upon which. Dr. Mosley relied, were not established by plaintiff.
Dr. John L. Woodall testified for plaintiff and expressed the opinion that decedent's symptoms and the history of the case made out what he termed a "true case of angina pectoris". However, this witness also stated that he understood the deceased to have been engaged in strenuous work and that he was in an overheated condition to the extent, at least, of being hot and wet with perspiration. Dr. Woodall defined angina pectoris as being an intense spasm of the muscles of the heart and expressed the belief that this spasm followed an undue or unusual exertion.
Dr. J.W. Scott was the chief medical witness for the defendant, and was, as we have stated, the only physician who had the opportunity of observing Hemphill before death, and after his seizure by the attack which immediately preceded death.
Zealous counsel for plaintiff has devoted much of his argument and briefs to a detailed and severe criticism of the testimony of this witness, most of which adverse criticism appears to have been directed at the circumstance that the witness is employed by the defendant company, paid a monthly salary for his services, and has been so employed for a long period of years. For this reason, counsel contends that the testimony of Dr. Scott must be considered as biased in favor of his employer, and insists that, accordingly, his testimony is entitled to scant consideration. We have borne in mind counsel's arguments on these points, but we find nothing in the doctor's testimony in this case which indicates any bias or partisanship. There is no question as to the fact that the witness was in error in his original diagnosis of acute indigestion, which he later changed, after the incident of death, to a diagnosis of coronary thrombosis. Dr. Scott's testimony as to decedent's symptoms, appearance and conduct, is quite in *Page 638 
accord with the testimony of other witnesses who had the opportunity of observing the decedent prior to his death.
After thorough consideration of Dr. Scott's testimony, we are convinced that he has over-emphasized the effects of a possible attack of indigestion suffered by the decedent. Nor are we inclined to find that the witness' final diagnosis of coronary thrombosis is substantiated, for, in the final analysis, this diagnosis rests upon speculation and conjecture. It is evident throughout Dr. Scott's testimony that this case was unusual, that he was puzzled and uncertain, and that he was surprised and shocked by the suddenness of his patient's demise. The witness testified that Hemphill died of an occlusion caused by gas pressure, the exciting cause being indigestion, but failed to establish the correctness of this diagnosis with anything approaching legal certainty.
One other medical witness was examined on behalf of the defendant, Dr. John Mosley, whose opinion was based upon a statement set forth in a lengthy hypothetical question by defense counsel. This opinion was to the effect that the history and symptoms of the decedent were typical of coronary disease, and that death resulted from a coronary thrombosis. Under cross-examination, the witness testified that any kind of exercise would tend to augment or accelerate a heart ailment, but since this conclusion presupposes the existence of a heart condition, which was not shown by any proof in the record, we do not feel that this point should be regarded as persuasive.
In our study of this case we have not only diligently considered cases cited in briefs of counsel for both plaintiff and defendant, but have examined numerous additional cases involving similar actions where the cause of death or disability was asserted to have been some type of heart disease or some malady related to or affecting the heart.
The facts in Wright v. Louisiana Ice Utilities Co., 19 La. App. 173, 138 So. 450, showed that the employee dropped dead about noon on a day in August, while engaged in delivering ice. It was established that the deceased suffered from a pre-existing diseased condition of the heart; that he had, between the hours of 6 A.M. and noon, delivered a total of 5100 pounds of ice in blocks ranging in size from 12 to 100 pounds, and that at the time of the fatal attack he was in an overheated condition.
In Richey v. Union Paving Co., La. App., 151 So. 657, 658, the court held that the operator of a dragline who suffered a heat stroke in the course of his employment was entitled to compensation, since the heat stroke directly preceded a heart attack, and, therefore, aggravated a pre-existing condition if it did not actually induce the attack itself.
The plaintiff in Renfrow v. Caddo Parish Police Jury, La. App., 155 So. 291, affected by high blood pressure, suffered a severe strain as the result of an unusual physical exertion in the course of his employment. Recovery was allowed and the court quoted with approval the doctrine enunciated in Jackson v. Travelers Insurance Co., 180 La. 43, 156 So. 169, 170, as follows: "It appears, therefore, that the fair preponderance of the medical testimony is to the effect that the accident caused by the heavy work hastened the death of the deceased, and that the strain he underwent, due to his weakened physical condition, was the cause of the hemorrhage of the stomach that resulted fatally."
The Jackson case, supra, involved the death of an employee from hemorrhage of the stomach. The deceased was injured in the regular course of his work while assisting in lifting cross-ties, and it was held that the injury, added to his pre-existing diseased condition, superinduced the physical disability that ended in death.
In Calhoun v. Rayville Ice Fuel Co., La. App., 161 So. 660, a 42-year old employee, suffering from high blood pressure, sustained an injury to his left arm. The injury was followed by a thrombosis, which, in turn, was followed by angina pectoris. It was held that the disability was the result of the accidental injury, there being a direct chain of causation. The Jackson and Renfrow cases were cited in support of the court's holding.
Compensation was allowed by the court in Johnson v. Zurich General Accident Liability Insurance Co., La. App., 161 So. 667, for the death of a night watchman who suffered a fatal heart attack immediately following the perpetration of a practical joke, of which he was the victim. The court held that the decedent had sustained a sudden and violent shock to his heart as the result of an unexpected and unforeseen event.
The facts in Brister v. Miller, La. App., 178 So. 284, showed that decedent was in an overheated condition and had exerted himself *Page 639 
in attempting to pull a cross-cut saw which had become stuck in the tree he was engaged in felling. The accident occurred in the latter part of July and death resulted in a few minutes. While there were no objective signs of injury, nor any evidence that deceased ever complained of heart trouble prior to the accident, compensation was allowed. In its opinion the court made the following statement:
"A doctor testified that a person with a weak heart could be seriously affected by a sudden strain or jerk. Of course, the doctor could not say that the strain or jerk which deceased received was the cause of his death, nor could he say that the cause of death was heart failure.
"It is our conclusion that the evidence shows that the deceased died of heart failure (sic.) caused from the strain and over-exertion in pulling the saw at a time when he was overheated."
The case of Ozbolt v. Weber-King Manufacturing Co., La. App., 193 So. 383, 384, concerned the death of a boiler fireman who suffered from hardening of the arteries, high blood pressure and heart trouble, and died within a few miuutes after having engaged in "the hot and exhausting task of shoveling fuel into the furnace * *."
The company doctor diagnosed the cause of death as acute dilation of the heart, and admitted that over-exertion and extreme heat would aggravate a weak heart and high blood pressure. The opinion of the court contained the following statement: "The facts and circumstances surrounding the sudden death of deceased convince us that it was hastened by the overheating and over-exertion arising directly from performing duties in connection with his employment * * *."
The case of Murray v. Mengel Co., La. App., 9 So.2d 818, 821, was an action for compensation for injuries resulting from a stroke of apoplexy suffered by plaintiff, a 75-year old glue cooker with arteriosclerosis, whose duties required him to handle sacks weighing from 100 to 200 lbs. From the very able opinion of Judge Ott we quote the following expression of the accepted rule: "It is now well established in our jurisprudence that, if excessive heat, heavy lifting or straining, although usual and customary, cause or contribute to a physical breakdown or accelerate its occurrence because of a pre-existing condition, the legal requirements are present to constitute an accident, and the injury is compensable."
In the case before us, learned counsel for plaintiff has emphasized the holding in the case of Hester v. Tremont Lumber Co., La. App., 15 So.2d 94. We think that the facts which were established with certainty in the Hester case clearly distinguish it from the case before us. It is true that the defense in the Hester case was based upon a diagnosis made by Dr. Scott, who is the chief medical witness in the instant case for the same defendant, of coronary thrombosis. Be that as it may, it was established that the decedent, who was a riveter, had been engaged in labor which necessitated extreme exertion. In an overheated condition, he suffered the fatal attack within a few moments after completing the bradding of a rivet. No other conclusion could reasonably have been reached by the court, except that of a compensable accident within the meaning of the compensation statute.
The case of Coleman v. Kellogg Lumber Co., La. App.,16 So.2d 657, in which recovery was allowed for aggravation of a pre-existing heart condition, concerned the effects of a traumatic injury of which there were objective symptoms.
Analysis of the above cases in which compensation has been allowed clearly demonstrates the fact that the "accidents" which resulted in death or disability fall under one of three very definite classifications, as follows:
First, those cases in which the accident was caused by some strain or exertion on the part of the employee, either unusual in nature or arising in the course of the heavy physical labor of his ordinary employment, under which classification the Renfrow and Jackson cases are typical examples.
Second, cases in which the employee has been subjected to both overexertion and overheating in the course of his employment, such as in the Wright, Brister, Ozbolt and Hester cases.
Third, cases in which the happening of some sudden, unexpected or unforeseen event has resulted in effecting death or disability, as the Richey case involving a heat stroke, the Calhoun and Coleman cases, in which the employees suffered traumatic injuries, and the Johnson case in which fright and attending shock brought on the attack. *Page 640 
[2, 3] The rule that plaintiff carries the burden of proof, even in compensation cases, where the utmost liberality is accorded, is firmly established by our jurisprudence. In cases in which the plaintiff has borne this burden by establishing the existence of some condition which induced, aggravated or accelerated a diseased condition of the heart, there is no question as to the right of recovery. In the instant case, plaintiff has failed to discharge the burden of proof in that she has not established any element which, linked with the result, would sustain her contentions that death from heart disease was caused by an accident sustained in the course of employment.
In those cases in which compensation has been denied, it has been uniformly true that the plaintiffs failed to discharge the burden of proof. The holdings in Tullis v. United Carbon Co., La. App., 142 So. 307, and Stockman v. Tremont Lumber Co., La. App., 155 So. 30, enunciated the doctrine that recovery will be denied where there is a failure to establish with legal certainty the causal connection between injuries suffered in the course of employment and resulting death.
In Kirk v. E. L. Bruce Co., La. App., 190 So. 840, the decedent was a machine operator performing light work, and recovery was denied on the ground that no unusual strain or overheating had been established.
The same reasons were assigned in denying recovery in Lynn v. Arkansas Fuel Oil Co., La. App., 192 So. 764, in which a 62-year old decedent was engaged in light work.
The case of Nickelberry v. Ritchie Grocer Co., 196 La. 1011,200 So. 330, is authority for the rule that a development of heart disease is not compensable unless something sudden, undesigned or unexpected in the course of employment has operated to cause or aggravate the disease.
The facts in Siscoe v. Cooley et al., La. App., 9 So.2d 313, showed that a 56-year old employee, suffering from high blood pressure, died within 10 minutes after completing a painting job, and recovery was denied on the ground that no causal connection between his labor and death was established.
Recovery was also denied in the case of Powell v. American Employers Insurance Co., La. App., 14 So.2d 333, on the ground that the aggravation or acceleration of long-standing heart trouble was not directly connected with a strain suffered by the employee in the course of his employment.
Claims of plaintiff in Arrington v. Singer Sewing Machine Co., La. App., 16 So.2d 145, were rejected on the ground that no causal connection was established between decedent's labor in the course of his employment and death from an aneurysm.
In addition to the conclusion that plaintiff has failed to establish the necessary facts in support of her claim, there is a further question with reference to her failure to establish the cause of decedent's death. Even the medical witnesses, who testified positively from symptoms and history that decedent died of angina pectoris, qualified their conclusions to such extent as to materially weaken the effect thereof. While we thoroughly realize the difficulties of establishing facts of this character with absolute certainty, in view of the uncertainty of medical science with reference to diseases of the heart, and, while we are keenly aware of the liberality of construction of our compensation statute, which is imposed upon the courts of this State by both the purpose and intent of the legislation, nevertheless, it is essential that the reasonable obligations resting upon plaintiff must be met and discharged. To overlook or to bear with failure to meet the very liberal requirements of our compensation statute, and the jurisprudence bearing thereupon, can only result in the acceptance of surmise and speculation as a basis for recovery. The unconscionable injustices of such a procedure are too obvious to necessitate comment.
For the reasons assigned, the judgment appealed from is affirmed. *Page 641