GLADNEY, Judge.
The Brown Paper Mill Company, Inc., has appealed from a judgment in favor of Chester D. Stringer awarding workmen’s compensation benefits of $30 per week, not to exceed four hundred weeks, along with medical expenses for an employment injury to 'his back alleged to have occurred on May 13, 1952.
While engaged in deadening trees for his employer plaintiff accidentally struck a tree a glancing blow with his axe which then came into contact with and injured his left foot. This injury was treated by Dr. S. F. Fraser of Many, Louisiana, who reported finding a “laceration on the medial aspect of his left foot, just proximate of his great toe. This laceration came down to, and involved the bone, the first metacarpal, but it apparently cut in such a manner that it slipped along the tendon and did not cut the tendon to his great toe.” *641 Treatment did not' require hospitalization and after several dressings plaintiff returned to work on May 27,1952 and worked continually until June 13, 1952, when he voluntarily severed his employment because he was displeased with some remarks by his foreman, George Foster.
Upon the occasion of his quitting, plaintiff made no complaint of hack injury to his employer. He testified he may have told George Foster that he was quitting because of his back hurting. However, he was so uncertain about making this statement it cannot be accepted as a fact. George Foster, his foreman, denied any such complaint whs made. On June 27, 1952, plaintiff was sent by his attorneys to Dr. J. Ford Macpherson, orthopedic specialist of Shreveport, for an examination. Dr. Macpherson diagnosed his condition as due to an intervertebral disc injury whereupon demand for compensation was made and suit was instituted on August 4, 1952. The record reflects that Dr. Mac-pherson suggested that plaintiff wear a brace for his back and report back to him for myelographic studies. Such studies were never undertaken. Plaintiff next reported to Dr. Fraser on August 19, 1952, for treatment and thereafter on August 28th, September 2nd, 12th and 19th, 1952. During this period Dr. Fraser prescribed a back brace, took X-rays, administered medication and on one occasion diathermy. Dr. Fraser testified that to the best of his recollection on May 21, 1952, eight days following the foot injury, plaintiff complained of a pain in his right leg and back, which he thought related to and suggestive of a disc syndrome.
Chester D. Stringer is a single man, twenty-eight years old, weighing approximately 230 pounds, and resides with his mother and father in Sabine Parish. He completed the tenth grade at school and has more or less continuously followed the work of a common laborer. He had worked approximately six months for the Brown Paper Mill Company, Inc., when he left their employment. He has not enjoyed the best of health. At intervals over the years he has been treated by Dr. Fraser for a chest condition. Dr. Fraser testified Stringer had had. a very extensive' pneumonia with pleural effusion and subsequent X-rays and examinations .indicate a solid lung- on .the left with a definite 'shifting of the heart to the left. He expressed the opinion that the left lung. was non-functioning or almost so. The physician considered plaintiff’s lung condition a definite physical handicap, especially during excessive heat -or cold, and, he thought plaintiff would be more easily fatigued from hard manual labor than a person, with normal lungs. In addition to:the above described condition, plaintiff has high blood pressure. These conditions are not associated with the accident and injury herein alleged and sued upon. ■
There is no evidence that plaintiff ever was involved in other compensation claims. He has not been employed, nor has he performed any manual labor since June 13, 1952. He testified repeatedly of persistent and continuing pain during the entire time he worked for the defendant following the foot injury, declaring he experienced pain when he boarded the truck which transported -him' to work, that he felt pain when he bumped -along over the roads and whenever he bent or stooped over or when he lifted anything heavy. He stated the only relief for his back was when he was reclining in bed.
Plaintiff testified that at the time he was injured on May 13, 1952, he was using a short handled axe about twenty-seven or twenty-eight inches long, girdling trees for the'purpose of deadening them through the application of poison. He gave this version of the accident: “I took the axe and the first tree I came to was elm, and I chopped at it and it glanced outside and came on around' and cut my foot and I sat down and pulled my shoe off and Mr. Ford and one other boy went up to talk to me, and Mr. Ford brought me to Fraser Sanitarium.” In response to questioning he affirmatively answered that he swung hard at the tree and hit the tree a glancing blow. He did not complain to Dr. Fraser about pain in his back on May 13, 1952, but says he first noticed it two or three days later, and so told Dr. Fraser pn the next trip he went to see him, at *642 which time-Dr, Fraser examined his back and gave -him some medicine. This testimony was corroborated by Dr. Fraser who stated the date was May 21, 19S2, some eight days after the foot injury. Stringer testified the only other person to whom he mentioned his back was hurting, was his father, C. P. Stringer. It was testified by C. P. Stringer that his son had never had any prior bade trouble but he complained of his back about three days after he cut his foot. He asserted his son told him his back-and-right leg were hurting him and he rubbed those members with a salve. Mr. Stringer seems somewhat obscure on his dates as : he - testified that his son “worked on about three or four days before he quit.” Actually, the time would have been in excess of ten days.
Plaintiff does.not attempt to bolster his case with further lay evidence. On the other hand the employer has produced ten fellow employees, including the foreman, George Foster, who testified they worked with and accompanied plaintiff to his work on all occasions from May 27th to June 13th, and during that-time plaintiff made no complaint of back or leg pain while doing his regular work and performing other heavy tasks. Defendant’s counsel points to this testimony concerning the manner of occurrence of the original accident, the manifestation of injury on the part of plaintiff, his subsequent employment and continued manual labor, and final voluntary termination of employment as being impressive evidence plaintiff did not suffer the back injury complained of.
Medical evidence comes from Drs. Ford J. Macpherson, Carson R. Reed, Jr., A. Scott Hamilton and S. F. Fraser, the latter having been plaintiff’s physician over a' long period of time, and the one who rendered all professional services in connection with the foot injury of May 13th, and treated plaintiff for his back complaint on the dates above set forth. Dr. Ford J. Mac-pherson made his examinations on June 26th and October 7, 1952. The visitations to these doctors, other than Dr. Fraser, were apparently for the purpose of diagnosis and giving expert testimony upon the trial of this case. On August 7, 1952, following an examination by Dr. Mac-pherson, plaintiff was examined by Dr. Carson R. Reed, Jr., and Dr. A. Scott Hamilton of Monroe, Louisiana, orthopedic specialists.
A pivotal witness in this case is Dr. Fraser called by the defendant. He reported by letter the status of plaintiff’s foot injury to the Brown Paper Mill Company, Inc., on May 16, 1952, relating his findings following the examination of May 13, 1952, and treatment,of the injury. On May 30th he wrote again, reporting the visits of Stringer for dressings and that the patient was last seen on May 24, 1952, at which time he told Stringer he could return to work. On July 17th Dr. Fraser gave a further written report to the J. Ed Morneau Insurance Agency of Natchi-toches, Louisiana, in which he summarized his findings and treatment for the foot injury and reported the employee had been permitted to return to work. In this letter Dr. Fraser wrote: “At the time Mr. Stringer reported in with his foot, I have no record of any complaint of back injury, nor do I recall his having told me his back was hurting on May 13, 1952.”
It is rather difficult to understand why the doctor did not think that the complaint, examination and suggested disc involvement- noted as of May 21, 1952 were relatively not worth mentioning in his letter of May 30, 1952. The date of May 21st is given positively from notation and not otherwise explained, except in the following quotation from his testimony:
“Q. Dr. Fraser, at the time that you granted the medical discharge in this case, was the treatment complete and was the patient advised — was the patient satisfied with the medical discharge and his ability to return to work ? A. I assume that he was, however, I have here in my record a notation that on the 21st of May, while reporting in to get his foot dressed, that he stated he was still having trouble with his right leg. At that time-1 examined him and obtained the impression that he had what is known as a disc syndrome. Inasmuch as he was — his weight was 229, which *643 is overweight for him, I advised that he get on a weight reduction diet, explained the reasons therefor, and gave him medication for same. At that time, I explained- to him that I would have to consider that a personal charge and billed him accordingly for the medication that I gave him.
“Q. And that was on May 21, 1952? A. Yes.
“Q. Did you have any occasion to give him any additional medication or any additional treatment for that alleged pain up' until the time he was discharged and returned to work on May 27, 1952? A. I believe that was the only time I saw him during that period of immediate treatment for his foot injury.
“Q. So that his discharge was as being able to return to work and was without any objection by him as to his ability to return to his work? A. I don’t recall any serious objection he had in regard to returning to work when I discussed it with him, however, I have no notation here on this May 27th when I removed the sutures. I discussed his returning to work and advised that I thought it was all right.”
This written statement of July 17th was made at a time when his visitations with plaintiff were fresh in his mind and seems inconsistent with the testimony given by Dr. Fraser upon the witness stand.
He further stated on cross examination:
“Q. Doctor, if it be proved that Mr. Stringer worked regularly, say for the six (6) months preceding the date of the injury to his foot, and assuming that it be proved that there was no complaint of back pain on the job or any trouble with his back on the job — in other words, expecting that he was able to do his work satisfactorily for that period of time, in the absence of proof of other trauma between the date he cut his foot and the date you diagnosed the ruptured intervertebral disc, would you testify whether or not it is probable that the mis-swing of the axe precipitated the symptoms of the ruptured intervertebral disc ? A. May I answer that in this way? Assuming.there had been no other injury, and he had.no other- problem there, it is entirely possible that a mis-lick or a swing of the axe would precipitate a disc syndrome. It would seem to .me, however, that had this been done, he would have complained of his back when I saw him; therefore, I say that it is possible, but I would hesitate to say it was probable in view of the fact that he did not complain to me at the time.”
It is apparent from the evidence given by Dr. Fraser he did not believe there was causal connection between the accident of May 13th and the complaints of back and leg pain.
Plaintiff was given orthopedic examinations by Drs. Macpherson, Reed and Hamilton. Dr. Macpherson reached the conclusion that plaintiff at the time of his examinations on June 26th and October 7, 1952, was suffering from a ruptured inter-vertebral disc and stated that it was consistent to believe such injury, could have occurred by reason of the mis-swing of the axe by plaintiff -on May 13, 1952. He further expressed an opinion that plaintiff was not able to return to work and that no definite prognosis could be given. From his findings total and permanent disability was inferred. To the contrary, both Drs. Reed and Hamilton concluded that plaintiff did not have a disc injury and that- in their opinion he was able to return to work. The examinations of the three orthopedic specialists varies to some extent in their physical findings, but their conclusions are irreconcilable. It would serve no useful purpose to compare the findings of these three distinguished doctors, each of whom has an impressive record of ' education, training and experience.
Necessarily, because a disc injury may be caused by an ordinary movement, these expert witnesses can throw but little light upon the question of whether or not plaintiff’s alleged back injury was caused by the mis-swing of the axe on May 13, 1952. They admitted upon questioning that it was possible for a ruptured disc to be caused *644 by a mis-swing of an axe, but likewise can be brought on by a swing ,of 'a golf club, or by stepping off the curb. ■. It is generally recognized by the medical profession that such an-injury may occur sometimes upon an ordinary and usual movement of the spine, such, as for instance, bending over to pick up a small article from the floor. It is acknowledged - that long periods of time following á precipitating cause sometimes pass before patients-come-for .diagnosis or for relief. This period may be for weeks, months, or even for years.
Plaintiff has undertaken the burden of establishing his complaint was caused by the swing of the" axe which cut his foot. This is essential in order to classify the injury as ■ being within the scope of his employment.
Our chief concern in this case is whether or not plaintiff has shown causal connection between, the alleged accident—the mis-swing of the axe—and his complaints of back injury.
The Workmen’s Compensation Act, LSA-R.S. 23 :1021 et seq., awards compensation to an employee not otherwise eliminated by statutory provisions, who receives personal injury by accident arising out of and in the course of his employment. The word “accident” is defined to mean “an unexpected or unforeseen event happening suddenly or violently, with or without human fault and producing at the time objective-symptoms of an injury.” The term “accident” has been construed by our courts to include the giving way of any portion of the laborer’s body while engaged in his work. It was stated in Hemphill v. Tremont Lumber Company, 1946, 209 La. 885, 25 So.2d 625, 626, 627:
“Since this case does not involve an accident causing external injuries or producing objective symptoms, we must look to the testimony of the medical experts to determine, whether this is one of those cases that comes within our well-settled jurisprudence that the legal requirements are present to constitute an accident and an injury is compensable where excessive heat, heavy lifting or other strenuous efforts, although usual and customary, cause or contribute to -a physical breakdown or accelerate its occurrence because of a pre-existing condition. See, Craft v. Gulf Lumber Co., 151 La. 281, 91 So. 736; Hicks v. Meridian Lumber Co., 152 La. 975, 94 So. 903; Jackson v. Travelers’ Ins. Co., 180. La. 43, 156 So. 169; Wright v. Louisiana Ice & Utilities Co., 19 La.App. 173, 138 So. 450; Richey v. Union Paving Co., La. App., 151 So. 657; Brister v. Miller, La.App., 178 So. 284; Ozbolt v. Weber-King Mfg. Co., La.App., 193 So. 383; and Murray v. Mengel Co., La.App., 9 So.2d. 818.”
An accepted legal ruling is that although the disabling event need not be different in kind or intensity from the regular work of the employee, yet it must appear that the employee’s ..regular work was physically strenuous • in character for the reason the claimant must show a causal relationship between his disability and the conditions under which he performed his work. In Siscoe v. Cooley, La.App., 1942, 9 So.2d 313, 314, it was observed:
“It is well recognized that if excessive heat, or heavy lifting, or straining, although usual and customary, causes or contributes to a physical breakdown or accelerates its happening, the legal requirements necessary to constitute an accident are present and such cases are compensable. But compensation is not due where no causal connection exists between the employment and the complained of disability or death.”
See also Murray v. Mengel Company, La.App., 1st Cir., 1942, 9 So.2d 818; Hemphill v. Tremont Lbr. Co., 1946, 209 La. 885, 25 So.2d 625, reversing La.App., 2d Cir., 1945, 24 So.2d 635; Lampkin v. Kent Piling Co., La.App., 1st Cir., 1948, 34 So. 2d 76; Waller v. Stone & Webster, La.App., 1st Cir., 1949, 42 So. 872.
We have given full consideration to the excellent briefs filed herein and have painstakingly reviewed the record presented, herein as well as the cited authorities. Our conclusion is that plaintiff has *645 not met the criteria of proof required .in compensation cases to justify the award made by our respected brother of the trial court.
The findings which háve led us’ to this opinion are summarized thus':
'Plaintiff did not experience hack pain while employed, but says that two or three days after he cut his foot on May. 13, 1952, he first became aware of his back trouble.
From May 27th to June 13, 1952, plaintiff regularly worked with and rode to and from the job with his fellow employees, yet during this period when he says he constantly suffered from pain in his back and right leg he admits he did not tell any one of ten of his fellow employees he felt any pain. Alt of these witnesses say he made no complaint and performed his work as he had done prior to May 13, 1952. ’
Plaintiff voluntarily left his employment without making any complaint of back pain.
The testimony of his personal physician that plaintiff complained of back arid leg pain on May 21, 1952 must be. considered with his written statement of July 17, 1952, that plaintiff had not complained to him of back pain.
Dr. Fraser concluded there was no causal relationship between plaintiff’s accident of May 13, 1952, and the complaints of back injury.
The expert witnesses uniformly testified an intervertebral disc injury may be precipitated by an ordinary movement of the spine, thus widening the field of speculation as to when and where did plaintiff receive the injury he complains of.
Medical evidence indicated there may be a considerable period of remission between a precipitating ■ occurrence of injury and complaint of pain in such cases. This characteristic of the injury likewise widens the field of causation thus making more difficult a finding that the precipitating cause was the result of an employment accident.
The expert testimony failed to show by a preponderance of the evidence expected in a case of this kind, the presence of a herni-' ated disc.
The affirmative testimony of Dr. Mac-pherson was offset by the negative conclusions of Drs. Reed’and Hamilton.
Counsel for plaintiff quotes from Malone, Louisiana Workmen’s 'Compensation Law and. Practice at pages 292 and 293, to the effect, “the claimant need only introduce enough evidence to, convince the trier that more. probably than not the injury was caused by the accident or employment in question.” , It is pointed out that each of the three experts testified that the occurrence of the alleged accident could have caused a disabling condition to the back. The following authorities are cited as sustaining plaintiff’s right to recover herein:
Johnson v. Brown Paper Mill Company, La.App., 35 So.2d 774; Christy v. Brown Paper Mill Company, La.App., 27 So.2d 917; Vautrot v. Maryland Casualty Co., La.App., 32 So.2d 500; Crier v. Kent Piling Co., La.App., 12 So.2d 472; Hayes v. Louisiana Long Leaf Lumber Company, La.App., 51 So.2d 855; Lowery v. W. Horace Williams Co., La.App., 8 So.2d 704; York v. E. I. DuPont De Nemours & Company, La.App., 37 So.2d 68; Dortch v. Louisiana Central Lumber Company, La.App., 30 So.2d 792; Hill v. J. B. Beaird Corp., La.App., 19 So.2d 295; Rutherford v. Frost Lumber Industries, Inc., La.App., 57 So.2d 914; Cook v. M. J. Walsh Boiler Scaling Company, Inc., La.App., 40 So.2d 655; Schum v. Marion T. Fannaly, Inc., La.App., 59 So.2d 135.
The fact that the mis-swirig of an axe could have produced an intervertebral disc injury is but one of the elements of proof. That plaintiff suffers from such an injury is another essential factor. However, in order to recover, plaintiff must introduce enough evidence to convince the trier that more probably than not the injury was caused by the accident or employment in question. Based upon our findings stated above, we are of the opinion the accident alleged upon was not shown to have caused the injury.
*646 Of the cited cases only York v. E. I. Dupont De Nemours & Company, supra, and Schum v. Marion T. Fannaly, Inc., supra, are analogous to the instant case in that in each of those cases the injury involved a ruptured intervertebral disc. In the York case claimant testified as to the accident: “I was pulling a hopper and I put the hydraulic jack under one and when I strained there was a'hot flash went down my right leg.' Seemed like my hip jumped out of place, and I was unable to walk for a few minutes.” [37 So.2d 71.] The sensation there referred to occurred during employment and presents a plausible precipitating cause of injury. The testimony of the plaintiff herein presents no such picture of cause and effect. In Schum v. Marion T. Fannaly, Inc., supra, the compensation claimant suffered a fall on May 19th in which she received a cut on her right arm, and a badly bruised right ankle. She was under doctors’ care from the day following the accident until the end of July. During the month of 'July she worked, although she complained of pain. The appellate court adopted the reasons for judgment given by the trial judge, who concluded :
“Considering the testimony of the plaintiff, and her complaints of pain, immediately after and while working, from the time'of the accident until the end of July, 1950, her treatment by the company doctors, the diagnosis of Dr. Morris of a mild protrusion of an in-tervertebral disc in the cervical or neck area, and the positive testimony of Dr. Colclough that the patient is suffering with a ruptured cervical intervertebral disc, this court is of the opinion that the plaintiff has established that she is permanently and totally disabled, and that the cause of her disability arose out of and during the course of her employment.”
We do not consider the facts of the Schum case apposite. It is, in fact, somewhat unusual to find factual situations in reported cases identical with the case under consideration. It is axiomatic that factual issues are governed by their own peculiar circumstances.
Heretofore we have summarized our findings to the effect plaintiff has not established his case by a preponderance of the evidence. Accordingly, the judgment from which appealed should be and is hereby reversed and judgment rendered in favor of the defendant, with rejection of plaintiff’s demands, together with all costs.