McBRIDE, Judge.
This suit which arises under the workmen’s compensation statute was filed by the widow of James Wooten, a deceased employee of Toye Bros. Yellow Cab Company. Alleging that her husband died of a cerebral hemorrhage on June 9, 1949, as a result of an electrical shock and/or physical exertion experienced on his job as an automotive mechanic and repairman, *448 plaintiff claims of Toye Bros. Yellow Cab Company compensation at the rate of $23.-31 per week for 300 weeks, plus medical and funeral expenses. The defense is that Wooten’s death did not arise from an accident occurring within the course and scope of his employment. Plaintiff has appealed from the judgment dismissing her suit.
Wooten was 31 years old and had been in the employ of the cab company for four years as mechanic and repairman. He reported for work at 8 o’clock a. m. on the date in question. Plaintiff contends that about 10 o’clock a. m. on that day Wooten received a severe electrical shock when a defective part of a welding machine came into contact with a wrench sending electrical energy through Wooten’s body. Wooten continued with his usual duties until noontime and then went to lunch. At about 12:30 p. m. he and a fellow employee began to “test drive” the brakes of a cab that had just been repaired, Wooten doing the driving during the test. After the test Wooten sat down and inspected the linings of the brakes of the cab; at about 2 o’clock p. m. he drove the cab to the second floor of defendants’ garage. Shortly after that Wooten pushed a wheel cart bearing two tanks to a position near one of the taxicabs. He then lighted an acetylene torch in order to burn a “race” off the spindle of a wheel on one of the cabs whereupon he collapsed falling forward into the flame of the torch, which burned his face. Wooten died in Charity Hospital about 6:15 p. m. the same day. An autopsy was performed by Dr. Richard Buck, Assistant Coroner of the Parish of Orleans, and the cause of death was diagnosed as cerebral hemorrhage (apoplexy).
It is argued that Wooten received an electrical shock (the voltage potential is unknown), and that the current was transmitted to his brain which caused the ensuing death. The only evidence of the alleged shock is the statement, admitted over the objection of defendants’ counsel as being hearsay, elicited from Joseph Turner, a fellow worker of Wooten. Turner did not see Wooten receive the shock, and his testimony is to the effect that Wooten told him he had been shocked.
Pretermitting the question of the admissibility of Turner’s testimony, the record establishes beyond question that if an electrical current had passed through Wooten’s brain the morning of his death, there would have been physical residuals which would be detectible on gross examination. Dr. Nadler testified there would have been deep pinpoint burns at the point of contact where the current entered the body and possibly similar burns at the point of exit. According to Dr. Buck, who performed the autopsy, there would have been engorgement of the blood vessels of the brain and an extravasation of the fluid covering the brain had an electrical impulse passed through that organ. Neither condition was found on the autopsy. Also there must necessarily have been petechial hemorrhages in the brain which would be evidenced on gross examination. This was the opinion not only of Drs. Nadler and Buck but also of Dr. Andrew V. Friedrichs, a pathologist who testified for plaintiff. Dr. Buck testified his autopsy failed to reveal these signs.
To go a step further with reference to the contention that Wooten sustained an electrical shock, it is plaintiff’s theory that when electrical current enters the human body it follows the path of the blood stream. It is argued that if the current entered Wooten’s hand as he held the welding machine, the current made a complete tour of the blood stream before making exit at the point where the other hand was grounded on the metal fender of a taxicab. In this way plaintiff attempts to explain how the current reached Wooten’s brain.
Plaintiff’s contention does find some support in Dr. Friedrichs’ testimony, but the doctor admitted that he based his opinion on the writings of Jellinek in 1903. Jellinek was characterized by Dr. Friedrichs as an authority on electricity. However, there is medical evidence in the record that the present-day theory is that electrical current follows a direct line between'poles and that current transmitted from one forearm to *449 the other does not traverse the brain. It was testified to that shock treatment is administered to patients by placing cathodes on each side of the head which direct the current to the brain without reaching the heart.
Plaintiff takes the alternative position that the cerebral hemorrhage was precipitated by Wooten’s activities during the course and scope of his employment.
There is no question that the term "accident” as used in the workmen’s compensation statute includes the giving away of any portion of the laborer’s body while engaged in his work when due to excessive heat, heavy lifting, or other strenuous efforts, although usual and customary, and even when the breakdown is attributable to a pre-existing physical condition. Stringer v. Brown Paper Mill Co., Inc., La.App., 66 So.2d 640, and authorities cited therein.
There was no evidence adduced that Wooten worked in excessive heat; on the contrary, at the time of his collapse he was working with the breeze from an electric fan directed at him. Nor was it shown that Wooten put forth any undue physical exertions. Some mention is made by plaintiff’s counsel that Wooten picked up a 300-pound welding machine, but the evidence is that all that the decedent did was to push two tanks in a cart with freely moving wheels for 20 feet and simply rolled the machine in place. The testing of the brakes of the cab consisted in no more effort than would be exerted by a motorist in applying the foot brakes of his automobile.
A considerable interval occurred between the time of Wooten’s collapse and the purported exertions. In the interval, if it can be said that he had unduly exerted himself, Wooten had time in which to relax and it appears that when the collapse occurred he was in a sedentary position and worked at eye level.
There is not a word of evidence in the record to the effect that Wooten’s physical activities contributed to his death. Dr. Friedrichs, plaintiff’s expert, spoke in terms of possibilities not probabilities. The doctor was questioned by plaintiff’s counsel on the effects of the “exertions” when considered together with the alleged electrical shock to Wooten’s brain. Dr. Friedrichs stated that if the death had been caused by an electrical shock, the autopsy would have revealed changes in the blood vessel walls and there are but few cases of cerebral hemorrhage caused by electric shock.
. Statistically, the experts stated there are only 18 percent of cerebral hemorrhages occurring as a result of physical exertion.
In the opinion of Dr. Nadler, defendants’ expert, neither the heat nor any of the conditions prevailing at the time, including the testing of the brakes and the moving of the welding machine were contributing factors to the cerebral hemorrhage suffered by Wooten.
The mere proof of the death of an employee as a result of a cerebral hemorrhage suffered while engaged in his occupation is not of itself sufficient to establish the right of his beneficiaries to compensation under the statute. It is required of plaintiff that he prove that the accident not only occurred in the course of the employment but that it arose out of the employment. In Waller v. Stone & Webster Engineering Corp., La.App., 42 So.2d 872, it was held that the beneficiary of an employee who died of a cerebral hemorrhage purportedly induced by moving a 54-pound meter was not entitled to compensation because no proof was made that the hemorrhage arose out of the employment. See also Evans v. Central Surety & Ins. Corp., La.App., 10 So.2d 406, and Dossey v. International Paper Co., La.App., 68 So.2d 242. In Linn v. Terrell Compress & Warehouse Co., La.App., 142 So. 193, involving a death from heart disease, we insisted upon proof of causal connection between the employment activity and the heart attack. A recovery may not be had in the absence of proof that the injury or death arose out of and in the course of the employment. LSA-R.S. 23:1031; Malone’s Louisiana Workmen’s Compensation Law and Practice, §§ 214 and 256. Dr. Nadler’s *450 opinion was that the most plausible explanation of the plaintiff’s death was the spontaneous rupture of a congenital aneurysm. The doctor stated that this term is used to describe the condition of those people who are born with a weakness in the blood vessel wall and in blood vessels in the circle of Willis or elsewhere in the brain. He went on to say that most aneurysms rupture spontaneously and mentioned that the cerebral hemorrhage could have occurred without physical strain even while Wooten was asleep or while seated on a chair.
The record indicates another fact that might be considered significant. Wooten evidently was not a healthy individual. He absented himself from work on many occasions explaining to the job foreman that he had been sick; one of his hands was swollen, and plaintiff herself testified that Wooten suffered from arthritis. It is also shown that Wooten experienced severe headaches. Dr. Friedrichs, plaintiff’s expert, was of the opinion that Wooten must have had high blood pressure because he had a very high spinal blood pressure and blood in the spinal canal. This could well explain the cause of the hemorrhage.
We agree with the trial judge that:
“ * * * plaintiff has failed to sustain the burden of proving that decedent’s death was caused by the alleged electric shock or by any other accident happening on the job or by any conditions obtaining on the job and under which he worked; * *
Under the most favorable view which we could entertain of plaintiff’s case it certainly cannot be said that the case has been proven with legal exactitude. The death of this young workman was most unfortunate, but we cannot conclude that death occurred by reason of his employment with the cab company.
For the reasons assigned, the judgment appealed from is affirmed.
Affirmed.