LOTTINGER, Judge.
This is a suit in workmen’s compensation wherein the petitioner claims to be totally and permanently disabled as a result of an accident sustained by him while working for ABC Rendering Co. of Louisiana, Inc. The defendant is Travelers Insurance Company, the compensation insurer of petitioner’s employer. The Lower Court rendered judgment in favor of defendant rejecting the demands of petitioner. A devolutive appeal has been taken to this Court by the petitioner.
The record discloses that on or about August 20, 1958 the petitioner, while working in his employment with ABC Rendering Co. of Louisiana, Inc. as a truck driver, was involved in an accident from which he alleges that he sustained certain disabling injuries. While driving the truck, the petitioner was faced with a sudden emergency, applied his brakes which failed to hold and ran off the highway and turned over. The happening of the accident is not contested in this suit, nor is there any contest relative to the weekly amount, if any, of compensation to which *530 petitioner would be entitled if he is successful in this suit. The only question before us is whether or not the petitioner is permanently and totally disabled from pursuing his occupation as a truck driver. The Lower Court, after considering the evidence adduced on trial and by deposition, concluded that petitioner was not disabled, and dismissed the suit. The petitioner has taken a devolutive appeal.
Upon trial of the matter, two doctors were present in Court and testified, one on behalf of petitioner, and one on behalf of the defendant. An additional doctor testified on behalf of defendant by way of deposition. Their testimony is briefly set forth as follows.
Dr. Walter B. Comeaux, a specialist in general and thoracic surgery testified that his practice extends to all injuries or ailments caused by trauma, regardless of what part of the body is involved. He examined the petitioner shortly after the accident at the Lady of Lourdes Hospital in Lafayette, Louisiana. Dr. Comeaux testified that petitioner was suffering from “severe contusions to left back, including the middle portion of the chest, the buttocks, and the left thigh and leg.” He was hospitalized for a period of four days during which he was given sedatives and medication for pain. The recovery of petitioner was satisfactory. Dr. Comeaux testified that the X-rays were within normal limits “with the exception of his lumbar spine which showed some sacralization of the fifth transverse process on the left side.” This sacralization was a congenital condition, and was not caused by the accident. No evidence of fractures or dislocations were found. Dr. Comeaux again examined petitioner on August 28th, at which time petitioner complained of soreness to the lower lumbar region on the left side and swelling of the left foot and leg. No evidence of the swelling was found, and petitioner was told to return to the doctor’s office when the foot and leg were swollen. In spite of the fact that petitioner later complained of more swelling to the foot and leg, he did not return in accordance with the doctor’s instructions.
Dr. Comeaux again examined petitioner on September 5, 1-958 at which time he again complained of pain in the lower left portion of the back and complained of barely being able to walk. Again examination failed to disclose any swelling of the leg. Although petitioner was noticeably limping when he came to the doctor’s office, on this date, Dr. Comeaux testified that he saw petitioner on the street about two hours after his examination at which time petitioner was walking with a little girl in his arms and he was not limping.
Dr. Comeaux next saw petitioner on September 26, 1958 at which time there was still evidence of sacralization of the transverse process of the left fifth lumbar- vertebrae, the examination again showed no fractures or other abnormalties. Op his last examination of October 3, 1958, petitioner was discharged to return to wqrk as a truck driver. Dr. Comeaux testified that there was no aggravation to the baclf ¡condition by the accident, and there was no evidence of nerve root irritation npr of an intervertebral disc. He stated that muscle spasm alone, without other [symptoms is not sufficient to make a diagnosis of a ruptured disc or of any other condition. He stated that a narrowing of the lum-bosacral joint space could be caused by some situation other than a rupturecj. disc, the most common one being an error of projection by the X-ray operator.
Dr. James Gilly, an orthopedic surgeon of Lafayette, Louisiana, testified that he examined petitioner on February 5, 1959. He stated that the examination revealed that the petitioner held his back muscles quite rigid, however, with alternately standing on the right and left l?g the muscles relaxed completely. There was a definite element of voluntary restriction present, and there were no symptoms to substantiate the complaints of petitioner. The legs measured equal lengths. An examination of the knee revealed a full range *531 of movement present. There was no swelling and tests to the knee were negative. Dr. Gilly testified that a lateral view X-ray of the lumbar spine showed a normal lumbar lordotic curve, which is a congenital condition not caused nor aggravated by the accident. His opinion was substantially the same as that of Dr, Comeaux in that the condition on the date of his examination was not a result of the accident. He testified that “at the time I examined him I thought he was deliberately trying to deceive me and I thought he was malingering.”
Dr. G. N. DesOrmeaux, a general physician and surgeon, examined petitioner on several occasions starting November 3, 1958. He testified that he found considerable spasm of the muscles of the lumbar area, particularly on the left side. At the time of Dr. DesOrmeaux’ examination the petitioner’s left knee was swollen. On subsequent examinations there was a lessening of the muscle spasm and the swollen condition of the knee until January 7, 1959, at which time the knee had subsided, however, there was still some spastic condition of the lumbar muscles. This doctor again examined petitioner on the morning of trial at which time he testified that the left lumbar group of muscles were more spastic than on previous occasions.
Dr. DesOrmeaux was of the opinion that there were some degenerative changes taking place in the lumbosacral joint the result of which could not be determined on the date of trial. He stated that there was a possibility that a ruptured disc might result, however, no concrete conclusions could be reached on the date of trial, as it sometimes took from one to two years for a disc to become manifest.
After trial on the merits, the Lower Court ordered additional examinations of petitioner by Drs. Gilly and DesOrmeaux and that they submit their reports to the Court. The report of Dr. DesOrmeaux shows that his examination on September 23, 1959 still found spasm of the' lumbar muscles, and that X-rays revealed-a narrowing of the lumbosacral space with saCr ralization of the. lumbosacral joint of the left side. He was of the opinion that this condition was a result of the accident, and that pétitioner would ultimately develop a rupture of the nucleus pulposus.
Dr. Gilly again examined petitioner on September 21, 1959 at which time he found no spasm nor any abnormality of the knee. Dr. Gilly stated that the complaints of pain and the restriction of movement by the petitioner could not be substantiated, and that he felt that the patient was deliberately trying to mislead him.
On the basis of the above evidence, the Lower Court awarded judgment in favor of defendants and dismissed the petitioner’s suit. Of course, we have the testimony of two experts against that of a general practitioner. It certainly appears to us that the testimony of the experts should be given the greater weight, and, furthermore we have the situation where two doctors testified that there is no residual resulting to petitioner, whereas, only one doctor, the general practitioner is of the opinion that there is disability resulting from the accident. We feel, as did the Lower Court, that the petitioner has failed to prove his case by a preponderance of the evidence, and the decision of the Lower Court will be sustained. The petitioner has presented us with the argument that the Lower Court erred in accepting the negative evidence of the two experts as against the positive evidence of the general practitioner. In support of his contention he cites the case entitled Stringer v. Brown Paper Mill Company, 224 La. 964, 71 So.2d 343, in which the Second Circuit Court of Appeal, 66 So.2d 640, was reversed by the Supreme Court. In that case the Supreme Court used the positive testimony of an orthopedist and a general practitioner, both of whom were of the opinion that the plaintiff had sustained a disc injury, to offset the negative testimony of two orthopedic specialists. Of course, in that case there were much more objective findings to substantiate the complaints of petitioner *532 •than are present in the case before us. Furthermore, there is no substantial difference in the testimony of the doctors in the present case in that they all found a narrowing of the lumbosacral space with sacralization of the lumbosacral joint on the left side. The testimony preponderates to the effect that this is a degenerative condition which was not caused by the accident. Although all doctors agreed that, at some future date, this condition might result in a more serious condition, the testimony of Drs. Comeaux and Gilly disclose that such congenital condition was not caused nor aggravated by the accident.
For the reasons hereinabove assigned the judgment of the Lower Court will be affirmed, all costs of this appeal to be paid by petitioner.
Judgment affirmed.