McINNIS, Judge.
; This appeal is from a judgment of the district court awarding plaintiff $24.96 weekly compensation during the period of disability not to exceed 400 weeks, and $35 medical expense, and such additional medical expense as may be required, not to exceed $500 in all, the compensation payments to begin April 26, 1952.
, There is no contention that plaintiff was not working for defendant in the course and scope of his employment at the time he claims he sustained the injury he complains of, and no dispute that his rate of *626 pay was $38.40 a week and no dispute as to the hazardous work he was doing, and the insurance coverage as alleged is admitted, however defendants contend that plaintiff sustained no injury while working for Victoria Sash and Door Co., Inc.
Plaintiff alleges that when injured he was loading window sashes weighing from 15 to 20 pounds each on a cart, picking them up one by one and turning to a cart or buggy to load them, and that just before quitting time as he turned to put a sash on the cart he felt a catch in his upper right back, and that he told one of his fellow employees, but was then of the .opinion that the pain would go away, and he continued to work until noon, but that when he reached his home about 1:00 oclock p. m. the pain was so intense he had to take to bed; that about 1:30 p. m. the injury, was reported to his employer, but he was not offered any medical assistance, so he applied to the Veteran’s Hospital in Shreveport, but was refused admission because he had sustained his injury in the course of his employment; that later the same day he went in an ambulance to Highland Sanitarium where he was treated by Drs. Matthews and Sutton, and on May 22, 1952 he went to Dr. J. H. Eddy for examination and treatment.
Dr. M. W. Matthews, specialist in internal medicine and diagnosis testified that he saw plaintiff as an emergency case about 2:00 o’clock p. m. April 26, 1952, at which time plaintiff gave him a history of injury substantially as alleged in the petition. He was admitted to the hospital and remained there until May 8, 1952 during which time he was seen in consultation with Dr. J. A. Hendrick and Dr. John B. Sutton, a neuro surgeon. Dr. Matthews made every sort of examination of plaintiff and he says: “At no time could I satisfy myself that the man had a physical disability. In other words I wasn’t able to make a diagnosis of any organic disease.” The doctor also said in his report: “I am unwilling to conclude that his symptoms are the result of an anxiety neurosis, conversion hysteria or malingering.” The doctor agreed that it is possible that a person could be injured as plaintiff says he was, but that in a person entirely physicially normal it is improbable. The doctor was not asked for prognosis, probably because he found no cause for disability.
Dr. Sutton could find no injury to any part of the nervous system, and he could find no reason for plaintiff’s complaints. He did say that it was barely possible for a person to sustain injury in the manner plaintiff claims he was injured, and he could not, pf course, say positively that plaintiff has no pain. This doctor was not asked for the prognosis probably for the reason he found no reason for disability.
Dr. James H. Eddy, surgeon, examined plaintiff May 22, 1952, and after the examination and taking the history given him, he found that plaintiff was normal in every way except for the complaint of pain in his back, and there he found about 50% limitation of motion by complaint of pain, and he summed up his findings as follows: “X-ray examination in the A P and Lateral and both oblique views showed no bone-or joint pathology. It was my impression at that time that this man suffered a strain in the latissimus dorsi and sacro-spinalis on the right side. There was no evidence of ruptured disc or bone or joint injury. It was my impression at that time that this man would be recovered in two or three months, and that he would probably have no permanent disability.” Later he said his condition could continue for a year or so. He also said the patient was cooperative • and seemed to be in good faith about his pain, but seemed to exaggerate some.
Robert Akins, brother-in-law of plaintiff says plaintiff told him about 15 minutes before quitting time that his back and side hurt him and he thought Akins would have to help him into the car. Akins took him home.
L. L. Burk a fellow employee working within two feet of plaintiff says that plaintiff made no complaint, that he heard, of any injury, and that the bundles of window sash they, were handling would not weigh over 15 pounds. All of the men were to quit at noon, but plaintiff left before Burk.
*627 Another witness for defendants is Ed Kernigan, representative of the insurance company. He identified a written statement by plaintiff, which is in the record. The statement has been read. In the statement plaintiff says his shoulder was where the pain was. This is the only variation from the pleading, and it is unimportant because the witnesses say he complained of pain radiating to his shoulder and around his body to his chest.
Lay witnesses- for plaintiff include himself and wife, J. J. O’Donnel, Mrs. Gertrude Farmer and Mrs. Evelyn Howe,- neighbors and friends. They all say that 'plaintiff complains of pain and is in bed a lot of the time. Mrs. Howe worked with plaintiff at Caddo Door & Veneer Co., and says he was a good worker. None of these lay witnesses aré in a position to testify as to the probable duration- of plaintiff’s disability.
We are constrained to disagree with defendant’s contention that plaintiff did .not sustain any injury while working for Victoria Sash & Door Co. Plaintiff is an uneducated man who says he made only the fourth grade in grammar school. He is 37 years old. He spent 6 years in the army. He has done hard work all the time, because that is all he is qualified to do. He has worked regularly and never had an injury or made a claim for compensation. He had worked only one and a half days for Victoria, having left Caddo Veneer & Door Co., he says, because of better pay. He has a wife and three small children dependent on him for support. He has had to call on the Salvation Army for help since he has been disabled.
It is inconceivable that a young man in his right mind would suddenly make up his mind to feign injury and disability and undertake to collect less than $25 a week, of which his attorney will get $5, when he could earn over $38 for working. The doctors do not say he is a malingerer, or that he is unsound mentally.
Counsel for defendant, in brief filed in this court says: “Counsel for plaintiff urged as a basis for his recovery that the plaintiff was a poor man in need of assistance. This might justify putting him in the Salvation Army but it is no justification in law or in fact for placing him on the payroll gratuitously of his employer.
' “The district court in rendering its verbal, opinion stated that the question was very close and it may be that the poverty plea of the plaintiff had' an' effect in the rendition of the judgment. Notwithstanding the fact that the plaintiff claims to be -an industrial worker and prior to his alleged injury was in.perfect health and in constant employment he should have saved something for a rainy day.” , .
The answer to the suggestion that the Salvation Army take care of plaintiff and his family, is that the purpose of the Compensation Statute is to take injured employees off of private and public charity, ánd to lay the burden on industry. On the question of why plaintiff did not lay up something for a rainy day, we would be pleased if. counsel will enlighten us on the way a common laborer earning less than $40 a week, with a wife and three children to support might be able to lay up anything for a rainy day in these days.
There is no evidence whatever in this record leading to the conclusion that plaintiff is permanently disabled, and the most that can be said for him is that he is temporarily totally disabled. The testimony of Dr. Eddy is to the effect that he should fully recover in two or three months, but he did not rule out the possibility that he would be disabled for a year or so.
For these reasons, the judgment appealed from will be amended so as to reduce the number of weekly payments to not more than 300. In all other respects it is affirmed at the cost of defendant-appellant in both courts.
HARDY, Judge.
We were influenced to grant this rehearing by the insistence of able counsel for defendant-appellant on a number of alleged errors with respect to our opinion on original hearing. Particularly, it has been urged that we failed to recognize and apply the principle that the claimant in a compensation case is obligated, under the rule *628 obtaining in other actions, to assume and discharge the responsibility attaching .to the burden of proof. by a preponderance of the evidence. This legal proposition we readily and willingly concede, and it is the only legal question which is here involved. The issues before, us are purely factual in nature.
Close and careful examination of the evidential facts has only served to unalterably strengthen our original conclusion. We are firmly convinced, on the record, that the claimant has more than adequately discharged the burden of proof.
Alternatively, defendant has urged that this cause, be remanded to permit showing that plaintiff (in the year 1947) was a claimant for compensation, which fact, it is contended, would have .the effect of im-peaghing the plaintiff’s testimony in the instant ' case and minimizing his credibility as a witness.
We observe that the exhibit attached to the application in support of this point (1) is an unsworn statement; (2) does not identify the “Elmer Moore” referred to therein as being identical with the plaintiff in this case; (3) does not indicate that the evidence, if pertinent, could not have been secured in time for submission on trial; and (4) in our opinion is so.trivial as to be unworthy of consideration.
We have heretofore .commented on the fact that piecemeal trial is to be avoided. The remand of cases, except under exceptional circumstances, is not favored- — else there would be no definitive end to litigation.
Accordingly, it is ordered and decreed that our original judgment herein be and it is reinstated and made, final. . .