71 So.2d 343

**STRINGER**

v.

**BROWN PAPER MILL CO., Inc.**

No. 41476.

Feb. 15, 1954.

Rehearing Applied for March 1, 1954. Motion of Applicants Dismissed March 17, 1954 with Prejudice.

Godfrey & Edwards, Many, for plaintiff-relator.

Hudson, Potts, Bernstein & Davenport, Monroe, for defendant-respondent.

McCALEB, Justice.

This is a suit for workmen's compensation. Plaintiff, a 28 year old white man weighing approximately 230 pounds, suffered injuries on May 13, 1952, when he cut his left foot with an axe while engaged in his employment as a common laborer for the Brown Paper Mill Company, Inc. He claims that, in addition to the injury to his foot, the mis-swing of his axe (he was attempting to cut a groove in an elm tree) caused him to wrench his back and, as a consequence, he has sustained a rupture of an intervertebral disc which renders him incapable of doing work of a reasonable character. Accordingly, he prays for compensation not to exceed 400 weeks, which is payable under paragraph 2 of LSA–R.S. 23:1221 (formerly paragraph B of Subsection 1 of Section 8 of the Employer's Liability Act, Act 20 of 1914 as variously amended) for injuries producing permanent total disability.

Defendant resists the demand on the ground that, if plaintiff suffered a back injury as alleged (which is denied), it is not attributable to the accident of May 13, 1952.

After a trial in the district court, there was judgment for compensation not to exceed 400 weeks but that judgment was reversed on appeal by the Court of Appeal, Second Circuit, where plaintiff's demand was rejected with costs. See 66 So.2d 640. We granted certiorari primarily because it appeared that the Court of Appeal erred in awarding a judgment against plaintiff for all costs notwithstanding that he had sued in forma pauperis.

In submitting the case on the writ of review, counsel for plaintiff impassionately complain that the Court of Appeal's appraisal of the facts of the case is faulty and that its reversal of the judgment of the trial court was unwarranted. Because of this, it becomes essential that we undertake

a review of the facts forasmuch as, the matter being here on certiorari issued under Section 11 of Article 7 of the Constitution, we are vested with the same power and authority in the case as though it had been carried here directly by appeal.

The record reveals that, as an immediate result of the accident, plaintiff sustained a laceration on the medial aspect of his left foot, which came down to and involved the first metacarpal, but did not sever the tendon of his great toe. The wound was sutured and plaintiff administered antitoxin and penicillin by Dr. S. F. Fraser, who handles accident cases for defendant and who is also the personal physician of plaintiff. Further treatment consisted of several changes of the bandage and, by May 27, 1952, this injury had healed sufficiently for plaintiff to return to work. In the meantime, two or three days following the accident, plaintiff began experiencing pains in his back, right leg and buttocks and, upon informing his father of them, the latter rubbed the affected parts with liniment. A few days later, on May 21, 1952, plaintiff reported these leg and back pains to Dr. Fraser who advised him that this ailment was suggestive of a disc syndrome. However, at that time Dr. Fraser evidently did not associate the back and leg pains with the accident for, when he prescribed a remedy to ease plaintiff's suffering, he told him that he would have to bill him separately for the treatment of his back and leg and also advised him, on May 27, 1952 when he re-moved the sutures from his foot, that he was well enough to return to work.

Conformable with Dr. Fraser's recommendation, plaintiff was paid compensation for one week and returned to his job on May 27, 1952. He worked continuously from that date until June 13, 1952, performing the same type of work that he was doing at the time he was injured. It is shown, and plaintiff admits, that he did not complain of any back injury, either while on the job or after the day's work, to any of his fellow employees; that he voluntarily discontinued his employment on June 13, 1952, at which time he said nothing about a back injury but informed his foreman, one George Foster, that he was leaving because it appeared to him that his work was not satisfactory to Foster.

Plaintiff testifies, however, that, ever since two or three days following the foot accident, he has suffered more or less continuously from pains in his back and right leg, involving the sciatic nerve and that, due to his continued suffering, he contacted attorneys respecting further claims for compensation. They advised him to consult an orthopedist, Dr. Ford J. Macpherson of Shreveport, and, on June 26, 1952, approximately two weeks after he severed his connection with defendant, Dr. Macpherson made an examination, employing various recognized orthopedic tests to determine his condition. From this examination, Dr. Macpherson diagnosed the case as strongly suggestive of a ruptured intra-

vertebral disc "possibly in the 4th and 5th interspaces, with protrusion to the right" and recommended that plaintiff be fitted with a Williams type brace.

On August 19, 1952, plaintiff again consulted his personal physician (defendant's doctor), Dr. S. F. Fraser, who reaffirmed his diagnosis of a disc syndrome and supplied him with a back brace. On August 28th, he returned to Dr. Fraser and X-rays were taken of his back.[1] He also visited the doctor on September 2nd, September 12th and September 19th, receiving treatment on each occasion.

On October 7, 1952, plaintiff was again examined by Dr. Macpherson who reported that his back condition had deteriorated and advised the performance of a "myelogram". We understand this to be a test which, if positive, indicates the necessity of surgery in order to cure the condition.

On the same date, a joint examination of plaintiff was conducted in Shreveport at the request of the defendant by its orthopedic specialists, Dr. Carson R. Reed, Jr. of Shreveport and Dr. A. Scott Hamilton of Monroe. These physicians stated, in substance, that they applied the various tests employed by orthopedists in this type of case. They expressed the opinion that plaintiff has not sustained a disc injury and that he is able to perform manual labor.

Thus, it will be seen from the foregoing that two issues of fact are presented for determination—(1) whether plaintiff has suffered a back injury which disables him from performing laborious tasks and (2), if so, is his disability attributable to the accident occurring on May 13, 1952?

We experience no difficulty whatever in answering the first question in the affirmative. Two physicians, Dr. Fraser, a general practitioner testifying for defendant, who is intimately acquainted with plaintiff's physical history as his personal physician, and Dr. Macpherson, an orthopedist, are of the definite opinion that plaintiff has a ruptured disc and that he is unable to do laborious work as long as this condition is present. These diagnoses confirm the reality of the pains plaintiff says he experiences and constitute positive proof which, if believed, fully sustains his claim that he is totally disabled at the present time and will continue to be so unless cured by surgery.

The only counter availing proof is of a negative nature, viz.—defendant's two orthopedists, who examined plaintiff on one occasion, and the testimony of ten fellow employees that plaintiff did not complain of back and leg pains during the period after he resumed work following the foot injury.

1. The orthopedists say that the X-rays are negative but they concede that this is not at all conclusive in determining whether there is a disc injury. Dr.

Fraser, however, maintains that the pictures reveal a narrowing of the fourth and fifth interspaces.

Under the circumstances, to reject plaintiff's testimony as to his pain and suffering would necessarily brand him as a malingerer notwithstanding that his complaints are substantially corroborated by respectable medical opinions that he has sustained a disc injury. Such a result, we think, would be unseemly in the absence of such strong contradictory expert opinion and accompanying factors so overwhelming as to completely destroy the credibility of the positive proof. The negative evidence here presented does not meet these requirements. On the contrary, aside from everything else, a comparison of the evidence of Dr. Macpherson with that of defendant's two experts leaves us with the impression that the former's opinion is of greater weight.[2]

We are also of the view that it is reasonable to conclude that plaintiff's back injury is attributable to the accident of May 13, 1952, when the mis-swing of the axe resulted in the laceration of his left foot. Inasmuch as it is shown that plaintiff never exhibited symptoms of a back injury prior to this accident, it seems but logical to resolve that the leg and back pains which he first noticed two or three days after the accident are directly connected with it and are the result thereof. However, it is said that there are circum-

stances herein which challenge and militate against this view. They consist of the delayed manifestation of the back and leg pains (or plaintiff's failure to become aware of them) until two or three days after the accident; his omission to inform Dr. Fraser that he was suffering from his leg and back until the eighth day following it; the fact that he did not complain of his back to any of his fellow employees after his return to work; Dr. Fraser's apparent disassociation of the back pains and the accident, which are evidenced by his report that plaintiff was able to resume work, and the statements of defendant's experts that a ruptured disc may be caused from a sneeze, a mis-step or any physical movement and does not necessarily result from a violent jerk or other traumatic injury.

For our part, we do not believe that the foregoing factors, whether taken separately or collectively, are of sufficient import to require a rejection of plaintiff's claim of causal connection between the back injury and the mis-swing of the axe. The circumstance that plaintiff did not notice the pain immediately is explained by Dr. Macpherson to our satisfaction. He opines that it is possible that plaintiff's attention at the outset was centered on the foot injury and that it was only when he

2. Dr. Macpherson testified that his diagnosis of plaintiff's case was based on his own objective findings as well as the subjective complaints of plaintiff. These objective symptoms were the presence of muscle spasm, buttock sag, diminished ankle jerk and atrophy of the right calf. His measurements disclose that the left calf was 15½ inches in circumference and the right calf 15¼ inches on first examination and, on second examination, 15½ inches and 15 inches respectively.

became active again that he began to notice the back complaint. Likewise, plaintiff's failure to immediately report the back pains to Dr. Fraser may be ascribed, we think, to a not unnatural inclination on his part to make light of the injury. And the same is true of his failure to tell his fellow workmen about it. Undoubtedly, he was harboring the hope that his ailment might soon disappear.

Dr. Fraser's failure to connect the back pains with the accident, when he was first told of them, was an error on his part and, since he was acting for defendant at that time, this mistake is chargeable to it. Surely, it cannot be assessed against plaintiff.

And the fact that ruptured discs may occur from a sneeze or other body movements, not necessarily strenuous, affords no sound basis for holding that the wrench unquestionably sustained by plaintiff's back, when he mis-swung with the axe and cut his foot, was not the underlying cause of his present complaint.

After all, the matter for decision presents only factual questions. These facts were determined favorably to plaintiff by the trial judge who was convinced that he had proved his case with reasonable certainty. A review of all of the evidence satisfies us that the judge was correct in his conclusion and, under any aspect of the case, it can hardly be said that his appreciation of the evidence was manifestly wrong.

The Court of Appeal, in concluding otherwise, laid much stress in its lengthy opinion on Dr. Fraser's deposition,[3] which it found to be inconsistent with a letter written by him on July 17, 1952 to an agency representing defendant's insurance carrier. In this letter, Dr. Fraser stated that at the time plaintiff "reported in with his foot, I have no record of any complaint of back injury, nor do I recall his having told me his back was hurting on May 13, 1952". In commenting on this, the court stated that it was difficult to reconcile this statement and the doctor's letter of May 30th to the defendant company, in which he said nothing of the back injury, with his testimony that he had noted, on May 21st, that plaintiff had stated that he was having trouble with his right leg and that, upon examination, he obtained the impression that he was suffering from a disc syndrome.

We doubt that there is inconsistency in Dr. Fraser's evidence. In his letter of May 30th, he merely states to defendant that the foot wound has healed nicely and that it is his opinion that plaintiff would be able to return to work. As explained above, it appears that, at that time, Dr. Fraser did not associate the back pains as emanating from the accident. And, in his letter of July 17th, it will be noted that he merely states that plaintiff did not, at the time he "reported in" with the foot injury (May 13, 1952) make any complaint con-

3. The court stated that it regarded Dr. Fraser as a pivotal witness in the case.

cerning a back injury and that he does not recall that plaintiff told him that his back was hurting on that date. This conforms completely with his deposition and with plaintiff's statement to the effect that the latter first told him of the back pains on May 21, 1952.

The judgment of the Court of Appeal is reversed and that of the district court is now reinstated and affirmed at defendant's cost.