TATE, Judge.
This suit is to recover compensation for-an alleged residual disability resulting from, an accident of January 27, 1956. Made defendants are the claimant’s employer and its insurer. The plaintiff appeals from the dismissal of his claim.
At work on the day in question the petitioner was loading heavy cement sacks, and he stumbled and fell backwards under a cart-load of cement. He immediately com-[1] menced suffering with a severe pain in his lower back. He was brought to the company physician within a few hours, who found the plaintiff to be in acute distress,' with definite pain and muscle spasm resulting from what the physician diagnosed as a back strain. The question before us is whether as a result of this accident the plaintiff is still disabled by reason of a residual back condition, so that he is entitled to receive further compensation payments beyond February 15, 1957. Compensation was paid to him through said date, but was then terminated because of the opinion of an orthopedist and other doctors that the lumbosacral strain in the plaintiff’s back was completely cured and needed no further medical attention.
In dismissing the plaintiff’s claim, the trial court stated: “Because the medical testimony in these proceedings is overwhelmingly in favor of defendants, the Court must necessarily yield to it.”
It is with some hesitation that we dis-agree with this conclusion of our learned trial brother; but our analysis of the medical testimony indicates that, while the number of doctors testifying in favor of the de-! fendants’ contentions does preponderate, actually only two doctors were .competent, to testify concerning the plaintiff's residual disability following his discharge- by the *524 other doctors on February 15, 1957. In our opinion, the latter two physicians’ testimony, corroborated by very strong lay testimony, preponderantly proves that the plaintiff is still disabled by reason of an injured disc caused by the accident in the course of plaintiff’s employment.
Because of this differing interpretation of the preponderance of the evidence in the record, we will discuss in chronological order of treatment and at some length the testimony of the physicians who examined and treated the claimant between the accident of January 1956 and the trial of April 1958. These doctors are: Dr. Whyte Owen; Dr. E. E. Merse; Dr. W. L. Meule-man; Dr. Charles Cracraft; Dr. R. J. Spedale; and Dr. Alvin Stander.
The Defendants’ Medical Testimony.
After the claimant, a colored laborer 52 years old at the time, had sustained his injury, he was at once brought to Dr. Whyte Owen, a surgeon and general practitioner in Opelousas. Dr. Owen noted that the plaintiff complained of severe pain at the junction of the lumbo-sacral part of the spine and found him to be obviously in acute distress and pain as objectively corroborated by the definite muscle spasm. He diagnosed the cause of the condition as a back strain and referred the plaintiff for further treatment to Dr. E. E. Merse in the plaintiff’s home town of Melville.
Dr. Owen saw the claimant approximately five times, the last of which was on May 18, 1956, at which time he found no muscle spasm and thought that the range of motion in plaintiff’s back was adequate. He was then of the opinion that the claimant could return to his employment. Dr. Owen could of course give no opinion as to the plaintiff’s condition following this last examination in May 1956; but, although he found nothing to substantiate a disc condition, he admitted that with back injuries a physician must always have the possibility of a herniated disc in mind. (Tr. 193.) [1]
Dr. E. E. Merse, a general practitioner in Melville, first saw the claimant on January 30, 1956 and last saw him on May 12, 1956. During the interval, he treated him approximately 66 times for back sprain, using diathermy and physiotherapy. He eventually referred the claimant to Dr. W. L. Meule-man, an orthopedist, for evaluation, because “after a considerable period of time * * during which apparently he showed very little improvement, I suggested that he consult an orthopedic.” (Tr. 182.)
At the time Dr. Merse last saw the claimant on May 12, 1956, there were no clinical findings remaining except “tenderness” which was “definitely * * * a subjective complaint.” It was then his opinion that the lumbo-sacral strain had almost subsided and that the plaintiff could not at the time of this discharge return to work, but might do so with gradual rehabilitation over two or three months. He stated that the patient had consistently complained of pain in the area of the third to the fifth lumbar vertebrae. Dr. Merse frankly admitted that since he had not seen the claimant since May 1956, he of course did not have any opinion as to any residual disability at the time of the trial in April 1958.
Dr. William L. Meuleman, an orthopedist of Lafayette, saw the claimant on March 22, April 17, and May 8, 1956. The patient complained of right leg pain, of back pain, and held himself slightly forward. On the occasion of the initial examination, although the doctor found no muscle spasm, he did find some difficulty in extension. Because of the persistent complaints of pain and after consulting Dr. Merse, Dr. Meule-man placed the claimant in a Lafayette hospital for six days hospitalization, during *525 which he was given routine care and injected wtih novocaine in the tender area. Upon the claimant’s discharge, he was fitted with a light corset type of support (which he has consistently worn since then.) Dr. Meuleman did not doubt the patient’s complaints of pain nor find that he was a malingerer, but since he saw no muscle spasm he doubted the severity of the pain of which the plaintiff complained.
This doctor had not seen the claimant since May of 1956 and frankly stated that he could offer no opinion as to the plaintiff’s subsequent condition. Dr. Meuleman also admitted that from the same accident of January 1956, the claimant could presently be suffering from an injured disc. (Tr. 235.) However, the doctor stated that in view of the lack of clinical findings the claimant in his opinion was free of any disability at the time of this doctor’s last examination in May of 1956 as well as on the occasion of his earlier examinations.
Following Dr. Meuleman’s examination of May 8, 1956, and apparently based upon his opinion that the plaintiff was no longer disabled, the defendant insurer initially terminated compensation payments (even though, as it turned out at the trial, Dr. Merse, the attending physician, actually felt that the plaintiff could not do his work free of pain without gradual rehabilitation over two or three months. Tr. 185, 187.)
Following this, on or about June 29, 1956, the claimant saw an attorney and was by him referred to Dr. R. J. Spedale, a general surgeon and general practitioner at Plaquemine, Louisiana. This physician saw the claimant approximately once a week thereafter until the trial in April of 1958. He found consistent muscle spasm and other symptoms indicating to him a disability by reason of a back condition, which he eventually diagnosed as an irritation or compression of one of the nerve roots between the fifth lumbar and the first sacral vertebrae and also possibly another between the fourth and fifth lumbar vertebrae. His testimony will be discussed at greater length below.
The defendant insurer then referred the claimant to Dr. Charles B. Cracraft, an orthopedic surgeon of Baton Rouge. This specialist examined the claimant on August 27, 1956, on November 28, 1956, and on February 15, 1957.
At his initial examination he found a minimal muscle spasm and a twenty per cent limitation of flexion in the back because of the pain. He found the plaintiff to be disabled upon his diagnosis of a lumbo-sacral strain, subsiding.
Upon receipt of this physician’s report, the defendant insurer promptly resumed the payment of compensation and continued it through February 15, 1957, at which date Dr. Cracraft found no residual disability, found no muscle spasm, and found some exaggeration of symptoms. It was his opinion, incidentally, that muscle spasm (a tightening of the muscles) is an objective symptom (Tr. 160), although the lack of muscle spasm does not necessarily prove that there is no pain (Tr. 161).
Dr. Cracraft admitted that the plaintiff could have been suffering from pain at the time of the last examination by him and that he had no reason to doubt his complaints of pain; but he could ascribe no medical reason for them. He found the patient consistently complained of pain in the lower lumbar and sacral area of the back and he consistently found tenderness over the mid-line (the first sacral vertebra). He had no reason to believe that the claimant was a malingerer.
With regard to the possibility of a disc injury, Dr. Cracraft stated that he had no reason to suspect such an injury and that there were no clinical findings to support such a diagnosis, although he admitted that there can be “remissions and exacerbations” of symptoms (Tr. 158) and that the patient’s symptoms were consistent with a disc injury in the area of the fourth and fifth lumbar vertebrae. It is also of interest that at the time of his discharge of the claimant on February 15, 1957, this surgeon was of the opinion that the claimant needed *526 four to six weeks of light activity before he would be in a position to resume his usual heavy duties (Tr. 168).
The only testimony introduced by the defendants-appellees was the testimony of the above four physicians. As can be noted, none of them had examined the plaintiff subsequent to February 15, 1957, and none of them were in a position to give an opinion as to plaintiff’s residual disability following that date. It can further be noted that the substance of their opinion is that the lumbo-sacral back strain from which the plaintiff was initially suffering was cured and that they found no clinical symptoms: to corroborate the plaintiff’s continued complaints of pain, although they did not feel that he was a malingerer. With regard to the disc injury for which recovery is presently sought, the sole effect of their testimony is that at the time they examined or treated plaintiff from fourteen months to two years before the trial there were no objective symptoms to corroborate the plaintiff’s complaints of pain.
The Plaintiff’s Testimony
The only two physicians testifying who saw the claimant subsequent to the termination of his compensation payments on February 15, 1959, were Dr. Spedale, the general surgeon above mentioned, and Dr. Alvin Stander, an orthopedic surgeon of Baton Rouge.
Dr. Spedale is a general practitioner at Plaquemine who has had specialized orthopedic training (in 1943 to 1945 on the Tulane Orthopedic Staff under Dr. Guy Caldwall) and who is a general surgeon (a Fellow of the College of Surgeons). He has practiced medicine for approximately twenty-five years and stated that approximately 20-25 per cent of his practice was orthopedic work. Pie is also a clinical instructor in surgery at the LSU medical school, spending one day. a week there.
Dr. Spedale, as previously noted, had first examined the claimant on June 29, 1956, and he thereafter treated him approximately once a week. On the occasion of his initial examination, as well as on his last examination on March 31, 1958 immediately prior to the trial, he found the plaintiff’s complaints of pain to be substantiated by muscle spasm.
This doctor came to the definite conclusion by his last examination that the cause of the plaintiff’s disability was a nerve root irritation between the fifth lumbar and the first sacral vertebrae, although he felt it was possible that there was an additional disc injury between the fourth and the fifth lumbar vertebrae. He felt that there were six objective symptoms to justify his diagnosis: the consistent mild muscle spasms throughout the period of observation; a definite numbness to pinprick in the right-leg; a straight leg raising up to only 90° on the right leg (as compared to 120° on the left leg); a narrowing of the disc spaces between the fourth and fifth lumbar vertebrae and the fifth lumbar and the first sacral vertebrae; ■ consistent complaints of pain and tenderness to pressure in a localized area of the back (which he stated he felt to be an objective finding due to their consistency and persistence over this period of time) ; by definite measurements, atrophy of the right leg as compared to the left leg.
The only other medical examinations of the plaintiff since the termination of the compensation in 1957 were made by Dr. Alvin Stander”, an orthopedic surgeon, who-examined tire plaintiff at the request of his counsel on May 28, 1957, and again on April 16,1958 (after the trial).
At this doctor’s initial examination, he found a limited range in motion in the low back, and he found spasm in the lumbar paravertebral muscles. He noted x-ray findings- of a narrowing of the disc space between the fourth and fifth lumbar vertebrae, but he found no “significant” discrepancy in the circumference of the right and left leg. At this initial examination he recommended a myelogram because of the narrowing between the disc spaces and! of ..the persistence of the symptoms over seventeen months. He admitted, however, *527 that he was frankly undecided whether the plaintiff had a ruptured disc or was exaggerating his symptoms. (No myelogram was ever performed on the plaintiff.)
At this doctor’s second examination, he noted that the patient complained more and exaggerated his symptoms, especially that there was a positive limitation in straight leg raising while lying in the reclining position, hut no such limitation in the sitting position (which should have produced identical findings). He stated that he found indications of muscle spasm on the straight leg raising test, although very little, if any, was indicated by the straight leg raising test in the sitting position. This specialist stated that muscle spasm indicates nature’s way of splinting that part of the body to reduce the motion and to protect from pain, but that it is not “a completely objective finding”. He stated that he noted the plaintiff’s muscle spasm but that he “found no maneuver that triggered any muscle spasm.” (Tr. 261.) Unlike Dr. Spedale, this physician 'found no significant atrophy as between the right and left legs.
The substance of this doctor’s testimony is that on his initial examination, he was undecided whether the plaintiff was suffering from a ruptured disc or not and therefore recommended a myelogram. On his second examination, where the patient exaggerated his complaints and complained of additional symptoms unrelated to his initial complaints, he thought that the man could go back to work with some additional therapy.
However, this doctor further stated that the persistent symptoms of the claimant were consistent with a ruptured disc and that a disc injury does not produce constant symptoms but rather symptoms which may be evident on one examination and not evident on an examination on another day. (Tr. 268.) Essentially, it was the contradictory symptoms on the leg raising test that led Dr. Stander to conclude that the patient was exaggerating his complaints ; but he stated that he did not think the man was malingering, but was rather suffering from a fixation (Tr.. 271). Dr. Stander stated, however, .he could not say that the claimant was not suffering from the pain of which he complained.
In addition, very strong lay testimony was introduced from several leading merchants and citizens of Melville, as well as from former co-workers and relatives, to the effect that prior to the accident the present claimant was one of the best and steadiest colored workers in Melville and has an excellent reputation for character and veracity. Prior to the accident, the plaintiff had been consistently employed 'and had bought his own home; he was the type of worker who was willing when he returned home from the construction work in which he consistently worked over the years to accept extra work on week-ends when offered it.
These lay witnesses unanimously testified that following the accident the claimant had not held any gainful employment and that they were in a position to know if he had secured same. These witnesses testified that after the accident the plaintiff consistently during the two years before the trial walked slowly and with guarded movements, as compared with his brisk pace of before the accident.
Conclusion.
In reversing a lower court’s holding that the claimant had not proved his case by a preponderance of the evidence, our Supreme Court stated in Edwards v. Shreveport Creosoting Co., 207 La. 699, 21 So.2d 878, 879-880: “The law is clear that the plaintiff in a compensation case bears the burden of proving his case with reasonable certainty, by a preponderance of the evidence. He is not obliged to furnish 'conclusive proof * * * ‘By a preponderance of evidence is meant simply evidence which is of greater weight, or more convincing, than that which is offered in opposition to it.’ ” Similarly reversing a lower court which had limited a claimant’s recovery based upon a greater number of *528 medical witnesses testifying in opposition to his claim, the Supreme Court also stated in Bean v. Higgins, Inc., 230 La. 211, 88 So.2d 30, 32: “Mere numerical numbers of [medical] experts is not sufficient for a determination of a decision in any case. We must take the overall picture of all the facts and circumstances * * * ”
In the present instance, it is undenied that prior to the accident the claimant had been an unusually industrious laborer, employed throughout his working life at heavy labor. This 52-year old workingman, with a wife and four children to support, suffered a serious accident and has consistently thereafter complained of disabling pain at the site of the first injury. He has never returned to gainful employment since the accident and has been forced to mortgage his home to secure his grocery bill.
None of the various doctors who have seen him feel that he is malingering, although at least one found a not un-normal exaggeration of his symptoms. The medical testimony without substantial contradiction admits that a natural residual of the accident and the initial disability could be the disc condition diagnosed by the plaintiff’s present attending physician, who had treated him for almost two years prior to the trial. The substance of the medical testimony adverse to the claimant is simply that there are no clinical symptoms to substantiate the patient’s complaints of pain, which it is admitted could be well-founded.
It is of interest that the plaintiff was discharged in May 1956 by the first three doctors tendered to him by his employer as cured of his initial injury, a severe lum-bo-sacral strain; but that in August 1956, another orthopedist examining him for the defendants, found him still disabled (as verified by objective symptoms) through February 1957. Subsequently, after discharge by this orthopedist in February, yet another orthopedist found objective symptoms of disability in May of 1957.
This latter orthopedist found few symptoms of disability on his second examination in April of 1958. But in view of the past history of periods of remission and then reappearance of the clinical symptoms corroborating the plaintiff’s consistent and persistent complaints of back pain, we do not think this negative testimony that there were no significant symptoms of disability on the occasion of this single examination outweighs the considered opinion of the plaintiff’s residual disability reached by the physician who had attended the claimant for almost two years prior to the trial and who had treated him weekly during the period, which opinion was based upon positive and objective symptoms founded on more extensive observation. Stringer v. Brown Paper Mill Co., 224 La. 964, 71 So. 2d 343; Mitchell v. Morgan Roofing Co., La.App. 1 Cir., 118 So.2d 492. The opinion of the orthopedist on this second examination on April 16, 1958, that there were no significant symptoms of disability (for he did find some muscle spasm) is actually the only medical testimony concerning the claimant’s condition after February of 1957 which does not afford medical substantiation of the plaintiff’s consistent complaints of pain and disability following the termination of compensation payments to him on February 15, 1957.
In addition, the seemingly well-founded and substantial lay testimony indicates to us almost conclusively the sincerity of the plaintiff’s complaints of pain and disability. See, e. g., Taylor v. Mansfield Hardwood Lbr. Co., La.App. 2 Cir., 65 So. 2d 360; Moore v. Victoria Sash & Door Co., La.App. 2 Cir., 64 So.2d 625. Further, the “courts will stigmatize a claimant as a malingerer only upon positive and convincing evidence justifying such a conclusion,” Miller v. United States F. & G. Co., La.App. 2 Cir., 99 So.2d 511, 516.
It is stipulated that the plaintiff is entitled to receive compensation at the maximum rate of $30 per week in effect at the time of the accident. The evidence also indicates that he incurred medical expenses (a medical bill due to Dr. Spedale) in the *529 amount of $300 which have not been paid by the defendants-appellees. (Tr. 143.)
For the above and foregoing reasons, judgment is rendered in favor of the plaintiff, Herman Shaw, and against the defendants, The F. & C. Engineering Company and the Fidelity and Casualty Co. of New York, holding these defendants-appellees solidarily liable for the payment of compensation at the rate of $30 per week, commencing with January 27, 1956, and continuing during disability, not to exceed 400 weeks in all (less credit for compensation paid through February 15, 1957), together with legal interest on each past due installment from the date of delinquency until paid. Judgment is further rendered for medical expenses of $300, with legal interest thereupon from date of judicial demand until paid. In accordance with the prayer of the petition, the fee of his attorneys is fixed at the sum of 20% of the award made by this court, not to exceed $1,000, to be paid from said award. All costs, including the fees of the experts, are to be paid by the defendants-appellees.
Reversed and rendered.

. Dr. Owen had also seen the claimant in approximately October of 1957 and had given him d slip to present to Charity Hospital to obtain medical treatment, -which slip stated: “This patient having . a long history of back trouble. He is unable to afforded treatment so is referred to you.” (P-1; Tr. 148.) However, he had ño recollection of having made any examination of the plaintiff on that date.