125 So.2d 436 (1960)
Nelson ISTRE, Plaintiff-Appellant,
v.
MOLBERT BROTHERS POULTRY AND EGG CO., Inc., et al., Defendants-Appellees.
No. 109.
Court of Appeal of Louisiana, Third Circuit.
December 19, 1960.
Rehearing Denied January 11, 1961.
Certiorari Denied March 3, 1961.
*437 Joseph E. Bass, Jr., and Lloyd E. Hennigan, Jr., Lake Charles, for plaintiff.
Cavanaugh, Hickman, Brame & Holt, by Frank M. Brame, Lake Charles, for defendants.
Before TATE, FRUGE and CULPEPPER, JJ.
TATE, Judge.
The plaintiff sues his employer and its compensation insurer for workmen's compensation benefits. His suit was dismissed after trial, and the plaintiff appeals, urging that the trial court erred and that he should be awarded compensation for total disability. In the alternative, the plaintiff has filed in this court a motion to remand this case to take further medical evidence in order to prevent a miscarriage of justice.
It is undenied that the plaintiff was involved in an accident at work and that, if disabled as a result thereof, he is entitled to the maximum weekly compensation. The chief defense is the contention that no disabling injury resulted from the accident.
The trial court's reasons for judgment dismissing the suit stated that sufficient doubt was raised by the evidence "as to the genuineness of plaintiff's complaints" (Tr. 23) that the trial court felt "that plaintiff has failed to establish to the degree of certainty required by law that he sustained a disabling injury as a result of the accident which occurred on October 23, 1959" (Tr. 24).
The uncontradicted facts show that the plaintiff was driving a truckload of chickens, which in an effort to avoid a cow was overturned at about 2:00 a.m. on the morning of October 23rd; that, after righting the truck with the aid of a wrecker and after about 7 hours re-loading the 256 heavy crates of chickens with the aid of two casual employees, the plaintiff and another employee (Benoit, who was also the plaintiff's first cousin) proceeded to Lake Charles some four hours distant, with Benoit driving most of the way; and that soon after the plaintiff's arrival he was discharged from his employment late that same (Friday) afternoon as a result of the accident.
The further uncontradicted facts show that on the following day (Saturday, October 24th) the plaintiff reported to the office of his family physician in Jennings *438 for treatment, complaining of back pain; that an associate of that physician (whose testimony was contained in reports admitted by mutual stipulation but which of course must be given the same weight as if the physician had testified personally, see Kimball v. Audubon Ins. Co., La.App. 1 Cir., 103 So.2d 529, syllabus 4) diagnosed the plaintiff's injury as a lumbo-sacral strain and, after three heat treatments, referred the claimant to Dr. George Schneider, an orthopedist, for further treatment (Tr. 17); that, commencing with November 5th, this specialist examined and treated the claimant approximately four times in the next two weeks and then hospitalized him under traction for 22 days, during which he saw the claimant almost daily, with a diagnosis of persistent and disabling spraining injury to the cervical and lumbar regions.
Dr. Schneider also saw the claimant as an attending physician approximately ten more times following the claimant's release from the hospital and during the first 2 ½ months of 1960 prior to the trial of March 15, 1960. Dr. Schneider was of the positive opinion that the plaintiff was disabled by his spraining injuries, although he admitted that there were no completely objective symptoms such as muscle spasm, which (he stated) did not necessarily occur as verification of a genuinely felt pain. This medical specialist's opinion of continuing disability was based upon the consistent complaints of pain, tenderness, and restriction of function in the same areas, consistent with the diagnosed disability and consistent over an extended period of time, together with his medical evaluation of the meaning of these consistently localized complaints and responses to repeated testing over an extended period of time. (See, e.g., Tr. 65-66.)
The only contrary medical testimony was that of Dr. Norman Morin, another orthopedist, who had examined the plaintiff four months after the accident at the request of defendants and on only this one occasion. Although conceding that the standard tests produced complaints of pain by the plaintiff, this physician discounted them because not verified by muscle spasm and because, he stated, inconsistent with the subjective reaction by the plaintiff to other tests. The testimony of this physician, who examined the plaintiff only once and then not for purposes of treatment but simply in connection with this litigation on the eve of trial, is entitled to far less weight than that of the attending physician who examined and treated the plaintiff frequently over an extended period of time. Stringer v. Brown Paper Mill Co., 224 La. 964, 71 So.2d 343; Mitchell v. Morgan Roofing Company, La.App. 1 Cir., 118 So. 2d 492.
Although the plaintiff has thus proved his disability by what seems to be a preponderance of the medical evidence, and although it is not contended that any claimed disability resulted from any cause independent of the accident at work, the trial court nevertheless was unconvinced of the genuineness of the plaintiff's complaints principally because Dr. Schneider admitted that his diagnosis was not based upon any objective symptoms but rather upon this physician's medical evaluation of the consistency and location of the plaintiff's complaints and upon the doctor's accepting the plaintiff's history as correct, and because evidence as to plaintiff's activities immediately following the accident indicated that he was not then in "severe pain" and thus that to this extent the history given by him to this attending physician was incorrect. (We may say at this point, having the benefit of the written transcript as our learned trial brother did not at the time he rendered judgment, the history reflected in Dr. Schneider's records was only that there was a rapid onset of pain, without reference to its severity or lack of it, Tr. 60, 65.)
The discrediting circumstances to which the trial court referred are (a) that two of the plaintiff's co-employees who drove up within a few minutes following the accident stated that the plaintiff told them he was not hurt, (b) that the evidence is uncontradicted that for seven hours following *439 the accident the plaintiff at least to some extent assisted another co-employee and two colored men hired especially for that purpose to re-load 256 heavy crates of chickens and that, following this, the plaintiff drove the truck back towards Lake Charles for at least an hour before relinquishing the wheel (because of complaints of pain) to the other co-employee, and (c) because in the course of a one-page written statement taken approximately twelve hours after the accident by an adjuster for the property damage insurer, who was admittedly not concerned with any physical injuries, there was a statement ("* * * and the truck overturned. I was still in the truck and was not hurt. The Texas highway patrol came * * *") to the effect that the plaintiff was not "hurt".
It is difficult for us to ascribe to these circumstances the seriously discrediting effect given to them by the trial court, which admittedly however had the benefit of seeing and hearing the witnesses as we did not:
As to (a), both of these co-employees drove off to Lake Charles shortly after the accident. Both orthopedic specialists testified that there is often a latent phase of one or two hours between an episode of trauma and the onset of manifestations (Tr. 65-66, 184-185). Also, a third co-employee (who was, however, the plaintiff's first cousin) without contradiction verified the plaintiff's complaints of an initial and thereafter continued onset of painful symptoms within such an interval after an initially complaint-less period.
As to (b), although this latter co-employee testified that the plaintiff loaded approximately one-fourth the crates, he also testified without contradiction that the plaintiff noticeably favored himself (see Tr. 55, 88-89) and that the co-employee therefore "told him to leave it alone and I would do all I could, that it would take more time but I'd do it" (Tr. 55). Also, the physicians' testimony does not indicate that the onset of pain would be crippling so as to prevent the plaintiff from helping in some degree the efforts of the three other employees engaged in unloading and re-loading the heavy crates of chickens.
And as to (c), the plaintiff after some hedging denied having made such an admission to the adjuster or having signed such a statement, a denial which we like the trial court to feel to have been incorrect and which denial to that extent reflects on the plaintiff's credibility. However, such an incidental observation in the course of a short written statement being taken by an adjuster solely interested in damage to the truck and cargo we cannot regard as any seriously damaging admission. And of course the jurisprudence is replete with instances of workmen whose initial injuries were so slight that they did not regard themselves as "hurt", although over the course of time such injuries manifested a prolonged and more serious disability. See, e.g., Wallace v. Remington Rand, 229 La. 651, 86 So.2d 522; Bigham v. Swift & Co., 229 La. 341, 86 So.2d 59; Johnson v. Cabot Carbon Company, 227 La. 941, 81 So.2d 2; Stringer v. Brown Paper Mill Co., 224 La. 964, 71 So.2d 343; Mottet v. Libby-Owens-Ford Glass Co., 220 La. 653, 57 So.2d 218; Michel v. Maryland Cas. Co., La.App. 1 Cir., 81 So.2d 36.
The plaintiff corroborated by Benoit, his cousin and former co-employee, testified that prior to his discharge he asked his employer's president to send him to a doctor; which testimony is denied by such witness for defendant. While doubt as to the accuracy of the plaintiff's recollection of the events of the conference has been cast by his failure to remember that he told the adjuster that he was not hurt, some doubt as to the accuracy of the employer's president's recollection is also cast because, although he positively and correctly remembered that the claimant told the adjuster he was not hurt (Tr. 145), he with equal positivity remembered that the claimant had told the adjuster that he was not in the truck when it overturned but had managed *440 to jump out the right side (Tr. 147)[1], which testimony was unquestionably incorrect as evidenced by the written statement taken by the adjuster. (See D-1, Tr. 19: "* * * and the truck overturned. I was still in the truck and was not hurt. * * *") The most that can be said probably is that the accuracy of neither witness's recollection can probably be trusted of this incidental matter in a conference primarily devoted to the truck and cargo damage and to the discharge of the plaintiff from his employment.
In urging that the trial court erred in evaluating the claimant's credibility unfavorably on the basis of such immaterial discrepancies, and in holding that the experienced attending orthopedist was fooled by simulated symptoms when this doctor saw the plaintiff frequently over an extended period of time and had even hospitalized him under traction for twenty-two days as a result of his diagnosis, the plaintiff in part relies upon the well settled jurisprudence that "courts will stigmatize a claimant as a malingerer only upon positive and convincing evidence justifying such a conclusion", Miller v. U. S. Fidelity & G. Co., La.App. 2 Cir., 99 So.2d 511, certiorari denied (where a trial court's dismissal of a compensation suit was reversed on appeal).
In Finley v. Hardware Mut. Ins. Co., 237 La. 214, 110 So.2d 583, and in Stringer v. Brown Paper Mill Co., 224 La. 964, 71 So. 2d 343, the Supreme Court in circumstances similar to the present reversed lower court judgments dismissing compensation suits and held, inter alia, that the expert testimony of attending physicians should not be disregarded[2] and should be favored over the testimony of physicians who examined the claimant but once and then for purposes of litigation, and also that the general and negative testimony of co-employees that a claimant did not suffer pain after an accident was not of sufficient weight to brand him as a malingerer and perjurer when his disability is corroborated by respectable medical opinion. See also Cockrell v. Penrod Drilling Co., 214 La. 951, 39 So.2d 429.
We think, therefore, that under the cited jurisprudence our learned trial brother did not apply, in determining whether the plaintiff had proved his disability by a preponderance of the evidence, the legal standards applicable to weighing the testimony offered. In our opinion, the plaintiff has offered preponderating proof that a disabling injury resulted from the accident.
The attending physician estimated that the plaintiff's disability would persist for three to four months beyond his last examination of March 4, 1960. However, by an alternative motion to remand on the merits which it is unnecessary to discuss *441 because of the disposition we have reached upon the merits, the plaintiff has attached physicians' reports indicating a persistence beyond such date. Although the plaintiff likewise argues that upon proof of his undoubted disability at the time of the trial, accepting Dr. Schneider's testimony, he is entitled to a judgment for temporary total disability, we think the fairer course under the particular facts and circumstances of this record is to render judgment in his favor awarding him compensation and medical expenses through June 4, 1960 (or three months following his last examination by Dr. Schneider), but to remand this case for further proceedings to take further testimony as to residual disability if any beyond said date. Johnson v. Travelers Ins. Co., La.App. 1 Cir., 99 So.2d 372; Fontenot v. Myers, La.App. 1 Cir., 93 So.2d 245. See also Cockrell v. Penrod Drilling Co., 218 La. 951, 39 So.2d 429.
For the foregoing reasons, judgment is rendered in favor of the plaintiff and against the defendants awarding the plaintiff compensation at the rate of Thirty-Five Dollars per week from October 24, 1959, through June 4, 1960, inclusive, together with legal interest upon each weekly installment from date of delinquency until paid, and in the further amount of Six Hundred Sixty-Two and 47/100 ($662.47) Dollars of medical expenses[3] together with legal interest thereupon from date of judicial demand until paid. All costs to date, including the costs of this appeal, are to be paid by the defendants-appellees.
It is further ordered, adjudged and decreed that the case be remanded to the District Court for such additional proceedings and testimony as may be needed to establish plaintiff's residual disability, if any, beyond June 4, 1960.
Reversed in part; remanded in part.
NOTES
[1] A great issue at the trial was made as to whether the claimant had jumped out of the truck into the muddy shoulder immediately before it overturned or was still in it when it overturned. The plaintiff, the only eye witness to the event, testified stoutly that he was still in the truck when it overturned and that he had told his co-employees when he came up that he thought of jumping out but did not have time before the truck overturned. In this he is corroborated by his cousin co-employee, by the statement given to the insurance adjuster immediately after the accident, and by the admitted fact that following the accident his clothes were not muddy; although in concert and apparently in an effort to discredit the plaintiff's credibility, two of the employees still in the defendant's employ and the defendant's president all testified that the claimant had told them he had jumped from the truck prior to his overturn. While we believe that the plaintiff has preponderantly proved his version of the accident, this is immaterial actually, because under either version the plaintiff's disabling injuries could equally have resulted.
[2] "* * * unless it has no substantial basis or is founded on an incorrect assumption of facts", 110 So.2d 586; which limiting proviso is inapplicable herein, where the rather substantial accident and the onset of pain within an hour or two after the accident are virtually uncontradicted, see above.
[3] The medical expenses are stipulated. See: Tr. 74, $184.00; Tr. 18, $34.00; Tr. 15, $402.80; Tr. 13, $22.34; Tr. 14, $19.33.