138 So.2d 862 (1962)
Willie James BUTLER
v.
AMERICAN INSURANCE COMPANY and Oscar Smith d/b/a Airline Cities Service Station.
No. 280.
Court of Appeal of Louisiana, Fourth Circuit.
March 12, 1962.
*863 Marvin C. Grodsky, New Orleans, for plaintiff-appellant.
Loeb & Livaudais, Marcel Livaudais, Jr., New Orleans, for defendants-appellees.
Before McBRIDE, YARRUT and JOHNSON, JJ.
JOHNSON, Judge.
The trial court dismissed plaintiff's suit for workmen's compensation and the plaintiff has appealed.
The pleadings in this case disclose that the plaintiff was an automobile service station attendant for seven months with the same employer prior to November 25, 1958, the date on which he claims to have had an accident injuring his back. On that day plaintiff was in the process of dismounting a wheel from a large passenger bus for the purpose of changing the tire. He alleges that he had difficulty unscrewing the lugs. In order to apply more pressure he stood or jumped on the handle of the lug wrench in an effort to "break" the lug, and in so doing he fell to the pavement, landing on his back, and wrenched his back. The joint answer of plaintiff's employer and his compensation insurer admits that plaintiff was employed in work of a hazardous nature but denies that an accident occurred and denies that plaintiff has any disability. The answer further admits that the plaintiff was paid compensation for six weeks to January 12, 1959 at $26.00 per week based on a wage rate of $40.00 per week.
Plaintiff's employer testified that on November 25, 1958, he sent the plaintiff to a bus station to take a tire off a thirty-two passenger bus; that the plaintiff came back without the tire and said that he could not unscrew the lugs; that, without saying anything about an accident or injury the plaintiff continued to perform his duties for several days and then complained about his back hurting, explaining that he had fallen on his back when he tried to take the wheel off the bus a few days earlier. Nothing more was said about the matter until a day or two later when the plaintiff asked for time off to go to see a doctor and also asked to borrow $5.00 for that purpose. His employer loaned him the $5.00 and gave him time off to go to the doctor but does not know if he did so. Later on that same day the employer sent plaintiff to see Dr. Ewin. Dr. Ewin is a specialist in surgery. He first saw plaintiff on December 2, 1958. From his testimony Dr. Ewin evidently made a pretty thorough examination of the plaintiff. He said that the plaintiff's forward bending stopped at thirty degrees with a slight list to the right; that his lateral bending was symmetrical; that plaintiff resisted straight leg raising at thirty degrees of the right and at ninety degrees of the left leg; that there was no muscle spasm, no evidence of any bruise and that plaintiff's complaints on these tests were so excessive that the doctor thought the plaintiff was guilty of exaggeration. On that day Dr. Ewin sent plaintiff to Dr. Soboloff for further orthopedic examination.
*864 Dr. Soboloff examined the plaintiff extensively. His findings and conclusions were very similar to those of Dr. Ewin. Dr. Soboloff and Dr. Ewin discussed the case and in order to give the plaintiff the benefit of any doubt, they decided that Dr. Ewin should give the plaintiff a series of treatments, which was done. Dr. Ewin saw the plaintiff a number of times during these treatments and then on December 22nd he sent plaintiff back to see Dr. Soboloff who re-examined him. The plaintiff acknowledged to Dr. Ewin and to Dr. Soboloff that he was considerably improved. Dr. Soboloff thought the treatments should be continued a short time and Dr. Ewin did continue the treatments until January 12, 1959, when he considered the plaintiff was fully capable of performing his work, and discharged him. When Dr. Ewin first examined the plaintiff in early December, he found the plaintiff's prostate glands to be very tender which suggested a condition of prostatitis. Dr. Ewin later found positive evidence of prostatitis and he believed that if the plaintiff had back pain at all it was caused by that condition and not the result of any trauma.
After being discharged on January 12 as able to work, the plaintiff on January 14, 1959, made application for employment to Southern Scrap Materials Company in the name of Booker T. Butler, but giving his own Social Security number. He was sent immediately to that company's doctor for a physical examination and on the doctor's report that Butler was in good physical condition, plaintiff was employed to do heavy labor. The plaintiff testified that he did not tell the examining physician that his back hurt or that he had been injured in an accident. From that day the plaintiff worked all or part of every week until September 27, 1959. The first three days until January 17, 1959, he worked 34.5 hours. The next week he worked 50 hours, and the next week he worked 75 hours. Then for 17 straight weeks he worked 40 hours or more each week except 4. On two of these 4 weeks he worked 32 hours each, one week he worked 26 hours and on the other he worked 38.5 hours. During the remainder of the time until September 27, there was one week when he only worked 8 hours; one week he worked 16.5 hours; three weeks during which he worked 20 hours each and on each of all the other weeks until September 27th, his time ranged between 32 hours and 51 hours, making a total of 38 weeks from January 14. Of course, plaintiff said he had to work to feed his family. However, during that period he bought a 1955 Chevrolet automobile, even though he was being transported to and from his work with other employees in his employer's truck. Since that time he says he has just piddled around. His testimony generally is not impressive. His complaints that he suffers pain even up to the date of the trial can be given little weight in the face of this work record and in view of the fact that he sought no medical assistance during that entire period. He says the reason he did not go to Charity Hospital is because his wife went there to have her baby and he knew of friends who had been there and he thought it was "too much red tape." In May, 1959, plaintiff was sent to Dr. Cahen, an orthopedic surgeon, for an examination and report and the plaintiff indicated that he had gone to another doctor but could not remember his name. X-rays were made for Dr. Cahen by Dr. Acardo. None of these doctors was called as a witness. The bills of Dr. Cahen for his examination and report and of Dr. Acardo were filed in evidence for payment. In the absence of their testimony in these circumstances it is impossible to escape the presumption that their testimony would not have been of any assistance to plaintiff in proving his disability.
This case was tried on November 16 and 17, 1959. On November 11 this plaintiff was examined by Dr. John C. Colcough, a neuro surgeon, who testified on behalf of plaintiff. His objective findings were that the plaintiff had difficulty walking on *865 his heels; that there was present persistent muscle spasm in the right lumbar area; that the achilles tendor reflex was absent, and the patella reflex on the right was diminished and that there was diminished sensation over the right knee cap and behind the right knee. Dr. Colcough thought that the plaintiff was not able to work at that time and said that if his findings had been the same during the period since the accident he would say the plaintiff had been disabled since the accident. On direct examination he made a very good witness for the plaintiff but his testimony on cross examination practically destroyed those opinions which had been formed on his examination on November 11th and on the history the plaintiff gave him. That history included plaintiff's statements that his pain was so severe and continuous that he had been unable to work. When counsel for the defense informed the doctor of plaintiff's work record and the kind of work he did, this doctor said that if this plaintiff could do that work over that period of time there could not be much the matter with him, and said further that if he had known the true facts, as the interrogation disclosed, his opinions would have been affected by them. He admitted that there was no nerve root injury. He said he could not make a diagnosis because his neurological findings were not compatible with plaintiff's complaints. He could only say that the plaintiff had a strain of the lumbar spine. That is exactly the conclusion which Dr. Ewin and Dr. Soboloff reached.
Dr. Colcough only saw this plaintiff once and that was 11½ months after the accident and he saw the plaintiff then not for the purpose of treatment. His findings and opinions most favorable to plaintiff are entitled to far less weight than those of Dr. Ewin who examined and treated the plaintiff for six weeks beginning within a few days after the accident. Istre v. Molbert Brothers Poultry & Egg Co., La.App., 125 So.2d 436; Stringer v. Brown Paper Mill Co., 224 La. 964, 71 So.2d 343; Mitchell v. Morgan Roofing Co., La.App., 118 So.2d 492; Bayles v. Jefferson Standard Life Insurance Co., La.App., 148 So. 465; Grober v. Grace Logging Co., 18 La.App. 185, 137 So. 613; Keener v. Fidelity & Casualty Company of New York, La.App., 96 So.2d 509, 515; 32 C.J.S. Verbo, Evidence, par. (c) and (d) § 569, pp. 396-401.
We are in accord with the principle that:
"It is a cardinal rule that for an expert opinion to be of value the reality of the state of facts upon which [it is based] must be shown to exist." Keener v. Fidelity & Casualty Company of New York, La.App., 96 So.2d 509.
See also Brown v. Ceco Steel Products Corp., La.App., 136 So.2d 161.
The plaintiff had his wife and some of his co-workers to testify that he was in bad shape. Basically there is no real conflict in the medical testimony and the lay testimony is not considered.
"It is the well-settled rule that, where there is no material conflict in the medical evidence, lay testimony will not be considered in a workmen's compensation case as to an employee's disability. Note 3, Guillory v. Southern Farm Bureau Casualty Insurance Co., 237 La. 374, 111 So.2d 314; Powell v. Liberty Mutual Insurance Co., La.App., 80 So.2d 902; Washington v. Swanner, d. b. a. Al's Texaco Service and Employer's Mutual Liability Insurance Co. of Wisconsin, La.App., 98 So.2d 913; Waldrup v. Consolidated Underwriters, La.App., 64 So.2d 468; Sellers v. T. J. Moss Tie Co., La. App., 56 So.2d 878; Maricelli v. Standard Accident Insurance Co., La. App., 57 So.2d 926; Fee v. Travelers Insurance Co., La.App., 193 So. 381.
The judgment is affirmed.
Affirmed.